## COOK *v.* TULLIS.

1. The ratification by one of the unauthorized act of another operates. upon the act ratified precisely as though authority to do the act had been previously given, except where the rights of third parties have intervened between the act and the ratification. The retroactive efficacy of the ratification is only subject to this qualification, that intervening rights of third persons are not defeated by the ratification.

2. An exchange of values may be made at any time, though one of the parties to the transaction be insolvent. There is nothing in the Bankrupt Act which prevents an insolvent from dealing with his property—selling or exchanging it for other property—at any time before proceedings in bankruptcy are taken by or against him, provided such dealing be conducted without any purpose to defraud or delay his creditors or to give preference to any one, and does not impair the value of his estate.

3. Accordingly, where a depositary of certain government bonds used some of them without the permission of the owner and substituted in their place a bond and mortgage, and the owner of the bonds upon hearing of the transaction ratified it, *Held*, that the creditors of the depositary, who had become insolvent when such approval was made, could not complain of the transaction, there being no pretence that the property substituted was less valuable than that taken, or that the estate of the bankrupt was less available to his creditors.

4. The trustees of a bankrupt take his property subject to all legal and equitable claims of others. They are affected by all the equities which can be urged against him.

5. Where property held upon any trust to keep, or use, or invest it in a particular way, is misapplied by the trustee and converted into different property, or is sold and the proceeds are thus invested, the property may be followed wherever it can be traced through its transformations, and will be subject, when found in its new form, to the rights of the original owner or *cestui que trust*. It does not alter the case that the newly acquired property, instead of being purchased with the proceeds of the original property, is obtained by a direct exchange for it.

APPEAL from the Circuit Court for the Southern District of Ohio.

Cook and others, trustees in bankruptcy of the estate of Homans, filed a bill in equity in the court below to set aside the transfer of a certain note for $7000, secured by mortgage, alleged to have been made by the said Homans to the defendant, Tullis, in violation of the provisions of the Bank-

rupt Act, and to compel an assignment of the note and mortgage to them.

It appeared from the record that in August, 1869, and for two years before, Homans, the bankrupt, was engaged in business as a banker, in Cincinnati, in the State of Ohio; that on several occasions during this period he had purchased bonds of the United States for the defendant, Tullis; that these bonds were left with him on special deposit for safe keeping; that the bonds were inclosed in envelopes and kept in a package by themselves, marked with the name of Tullis, and placed in a separate box; that on one occasion, about eighteen months before his failure, Homans had been permitted by the defendant to use $20,000 of the bonds thus purchased, upon condition of substituting for them in the package an equivalent in amount in bills receivable, and agreeing to replace the bonds when called for; that the bonds thus used were subsequently replaced; that on another occasion, about a year afterwards, in March, 1869, he took, without any such permission, from the package and used $6000 of the bonds, substituting in their place an equivalent amount in bills receivable; that in April following he removed these bills receivable and substituted in their place, for the bonds taken, a note and mortgage belonging to him, of one Hardesty, for $7000, the note bearing date April 17th, 1869, and payable in ninety days, and the mortgage being on real property; that this note was not paid at maturity, and in August following was placed by Homans, with the mortgage, in the hands of attorneys, with instructions to give notice to the maker of the note that if it were not paid by the beginning of the next term of the court, proceedings by suit would be taken for its collection; that Homans failed on the 26th of August, 1869; that soon afterwards Tullis was informed of the substitution of the note and mortgage for his bonds; and that thereupon he signified his acceptance of the same and his satisfaction with the transaction, and directed proceedings to be commenced by the attorneys, in whose hands the papers had been placed, for the foreclosure of the mortgage.

It further appeared from the record that, on the 20th of September following, Homans was adjudged a bankrupt upon a petition in involuntary bankruptcy, filed on the 13th of the month, and that in December afterwards the complainants were appointed trustees of his estate.

The deposition of Homans was taken in the case, and he stated in explanation of his conduct in appropriating the bonds in question, that as on a former occasion Tullis had consented to his using a much larger amount, he inferred that there would be no objection to his using a smaller amount if it could be done without risk to Tullis; that at this time he was carrying on his business as usual, and did not apprehend insolvency or bankruptcy; that he did not think it necessary when he placed the note and mortgage with his attorneys to give them notice that they belonged in Tullis's package, and did not do so until the day of his failure, when, remembering the omission, he gave them notice to that effect, and directed them to account to Tullis for $6000 of the note, stating that this proportion of it belonged to him. It did not appear that Tullis had any knowledge leading him to suppose that Homans, until the day of his failure, was insolvent, or contemplated insolvency.

The trustees of Homans by this suit sought, as already said, to set aside the transfer to the defendant of the note and mortgage, and to obtain possession of the same, on the alleged ground that the transfer was made for the purpose of giving the defendant a preference over the other creditors of the bankrupt, and preventing a distribution of the proceeds of the note equally among his creditors, in violation of the provisions of the Bankrupt Act.

The provisions relied on by the trustees are in the thirtieth section of the act (by the forty-third made applicable to trustees), and in these words:*

" If any person, being insolvent, or in contemplation of insolvency, within four months before the filing of the petition by or against him, with a view to give a preference to any creditor or

---

* 14 Stat. at Large, 534.

person having a claim against him, . . . makes any payment, pledge, assignment, transfer or conveyance of any part of his property, either directly or indirectly, . . . the person receiving such payment, pledge, assignment, transfer or conveyance, or to be benefited thereby, . . . having reasonable cause to believe such person is insolvent, and that such . . . payment, pledge, assignment or conveyance is made in fraud of the provisions of this act, the same shall be void, and the assignee may recover the property, or the value of it, from the person so receiving it or so to be benefited."

The court below adjudged that the defendant was entitled to $6000 of the proceeds of the note of Hardesty; and that he held the balance of the proceeds as trustee for the complainants, and entered a decree to that effect. From that decree the complainants appealed to this court.

*Messrs. George Hoadly and E. M. Johnson, for the appellants:*

1. The Hardesty note and mortgage were part of Homans's assets, procured by him, as we may reasonably presume, by means obtained from his general creditors. There is no evidence by which to apply the rule that the proceeds of a trust estate may be followed by the *cestui que trust* as far as they can be traced. We admit that property held in trust does not pass to the assignee by the proceedings in bankruptcy, but we assert that the trust must be such that the property can be followed or distinguished. " When the trust property does not remain *in specie*, but has been made way with by the trustee, the *cestui que trust* has no longer a specific remedy against the estate, and must come in *pari passu* with the other creditors."*

Homans took and used the bonds, but he does not suggest that he applied their proceeds, or anything bought with such proceeds, in obtaining this note and mortgage. For aught that appears he lost the proceeds of these bonds in his business.

---

* In re Janeway, 4 Bankrupt Register, 26; and see Paley on Agency, 90, by Dunlap, and cases cited.

2. The ratification could not retroact, for several reasons:

*First.* The doctrine of relation is a fiction applicable only when demanded by considerations of justice, and therefore not required when it will defeat the intervening rights of third persons, as here of Homans's trustees, representing his creditors, whose rights, for the same reason, and by the express provision of the act, relate back four months, for the purpose of avoiding preferences.*

*Secondly.* This fiction cannot apply to this case, because its effect would be the evasion of a statute enacted in the interests of morality. "Directly or indirectly" shall no preference be permitted, says the Bankrupt Act. Now, with the ratification, a preference is achieved; without it, none. The ratification is the consummation of an incomplete preference; and, as such, is itself forbidden by the act, and therefore to be treated as not having taken place at all, in fact or in law.

*Thirdly.* A ratification is not allowed by law when the act ratified is itself forbidden at the time of ratification. As Homans, after he broke could not prefer Tullis directly, neither could he prefer him by the indirect way of ratification. If an agent, without authority, assumes to do that which is afterwards prohibited by law, it is too late to give validity to the act by a ratification subsequent in date to the prohibition. To permit this is to defeat the law.†

In *Bird* v. *Brown*,‡ Baron Rolfe discussing the effect of ratification, says:

"But this doctrine must be taken with the qualification, that the act of ratification must take place at a time, and under circumstances, when the ratifying party might himself have lawfully done the act which he ratifies."

---

* Fleckner *v.* Bank of the United States, 8 Wheaton, 363; Stoddart *v.* United States, 4 Court of Claims, 511; Taylor *v.* Robinson, 14 California, 396; Wood *v.* McCain, 7 Alabama, 806; Reed *v.* Powell, 11 Robinson's Louisiana, 98; Smith *v.* McMicken, 12 Id. 653; Augusta Insurance Co. *v.* Packwood, 9 Louisiana Annual, 83.

† McCracken *v.* City of San Francisco, 16 California, 591.

‡ 4 Exchequer, 799.

He cites *Lord Audley's Case*,* reported alike by Croke, Moore, and Popham, which seems in point, and is cited with approval by Lord Coke in *Margaret Podger's Case*.†

*Fourthly.* The alleged ratification amounts to nothing. What was there to ratify? Nothing but the conversion of the bonds, which made Tullis the creditor of Homans. By ratifying this Tullis could deprive the transaction of its tortious aspect, and make the liability one by contract also, instead of sounding both in trover and assumpsit. But he could do no more.

*Mr. H. A. Morrill, contra.*

Mr. Justice FIELD, after stating the facts of the case, delivered the opinion of the court, as follows:

It is evident from the statement of the transaction, that the transfer by Homans to the defendant of the note and mortgage of Hardesty does not present a case of preference made by a bankrupt to one creditor over another, within the meaning of the Bankrupt Act. It was not a transfer to prefer a creditor. There was no debt at the time to the defendant to be preferred. The transaction was not one of borrowing. There was no loan made nor credit given. It was the case of an exchange of one species of property for another, made by one party without authority from the other, and subsequently ratified by the latter, or it was the case of the conversion to his use by the depositary of property in his hands, and his substituting property equivalent in value as the investment of the property converted.

This suit must proceed, therefore, if at all, not on the ground of an alleged preference to a creditor in violation of the Bankrupt Act, but upon the ground that the title to the note and mortgage never passed from the bankrupt, because the ratification of his unauthorized transaction was not made until after the period when the rights of the trustees attached; or on the ground that the note and mortgage never

---

* Croke, Eliz. 561; Moore, 457; Popham, 176.        † 9 Reports, 104a.

became subject in the hands of the bankrupt to the claim of the defendant as the investment of the latter's property, because the bonds appropriated were not first sold and their proceeds used in the purchase of the note and mortgage.

Both of these grounds were urged by counsel of the appellants, and it is on their disposition that the case must be determined.

The substitution of the note and mortgage in place of the bonds was approved by the defendant immediately upon being made acquainted with the facts. This approval constituted a ratification of the transaction. The general rule as to the effect of a ratification by one of the unauthorized act of another respecting the property of the former, is well settled. The ratification operates upon the act ratified precisely as though authority to do the act had been previously given, except where the rights of third parties have intervened between the act and the ratification. The retroactive efficacy of the ratification is subject to this qualification. The intervening rights of third persons cannot be defeated by the ratification. In other words, it is essential that the party ratifying should be able not merely to do the act ratified at the time the act was done, but also at the time the ratification was made. As said in one of the cases cited by counsel, " the ratification is the first proceeding by which he (the principal ratifying) becomes a party to the transaction, and he cannot acquire or confer the rights resulting from that transaction unless in a position to enter directly upon a similar transaction himself. Thus, if an individual pretending to be the agent of another should enter into a contract for the sale of land of his assumed principal, it would be impossible for the latter to ratify the contract if, between its date and the attempted ratification, he had himself disposed of the property. He could not defeat the intermediate sale made by himself, and impart validity to the sale made by the pretended agent, for his power over the property or to contract for its sale would be gone."* On the same prin-

---

* McCracken *v.* City of San Francisco, 16 California, 624.

ciple liens by attachment or judgment upon the property of a debtor are not affected by his subsequent ratification of a previous unauthorized transfer of the property.*

The question, therefore, in this case is whether any rights of third parties did thus intervene between the act of substitution made by Homans and its adoption and ratification by Tullis, which defeated the retroactive efficacy of the ratification. And the test is, as already indicated, could the parties have made the transaction at the time of the ratification without contravening the provisions of the Bankrupt Act? It is asserted by the appellants that the rights of the trustees extend not only to all property of the bankrupt in his possession when proceedings in bankruptcy were instituted against him, but also to all property transferred by the bankrupt within four months previously to a creditor in order to give him a preference over other creditors, or transferred by the bankrupt within six months previously to any one to defeat or evade the operation of the Bankrupt Act, the grantee in both cases knowing or having reasonable cause to believe that the grantor was at the time insolvent or that he then contemplated insolvency. Admitting this to be so, it does not follow that the trustees acquired any right to the note and mortgage in question. They were not transferred to the defendant, as already stated, to give a preference to one creditor of the bankrupt over another, for the defendant was not a creditor of Homans at the time, nor were they transferred to him to evade or defeat any of the provisions of the Bankrupt Act; the transaction was neither designed nor calculated to have any such effect. Homans was not insolvent at the time, nor did he contemplate insolvency. But even if he had been then insolvent, the transaction would not have been the subject of just complaint on the part of his creditors, if made with the approval of the defendant whose bonds were taken. There is no pretence that the property substituted was not equally valu-

---

* Taylor v. Robinson, 14 California, 396; Wood v. McCain, 7 Alabama, 806; Bird v. Brown, 4 Exchequer, 799.

able with that taken, or that the estate of the bankrupt was any the less available to his creditors. A fair exchange of values may be made at any time, even if one of the parties to the transaction be insolvent. There is nothing in the Bankrupt Act, either in its language or object, which prevents an insolvent from dealing with his property, selling or exchanging it for other property at any time before proceedings in bankruptcy are taken by or against him, provided such dealing be conducted without any purpose to defraud or delay his creditors or give preference to any one, and does not impair the value of his estate. An insolvent is not bound, in the misfortune of his insolvency, to abandon all dealing with his property; his creditors can only complain if he waste his estate or give preference in its disposition to one over another. His dealing will stand if it leave his estate in as good plight and condition as previously.

We do not think, therefore, that the rights of the trustees, though relating back four months so as to avoid preferences to creditors, and six months to avoid transfers to others, in fraud of the act, and thus going back of the ratification, touched the transaction in question or prevented the ratification from having complete retroactive efficacy.

The position of counsel, that the ratification, if sustained, only extended to the conversion of the bonds, and merely operated to deprive the transaction of its tortious aspect, all else consisting of dealings by Homans with his own property, is not tenable. The answer to it is, that the ratification was of the whole transaction taken together; that of the appropriation of the bonds upon substituting an equivalent in value for them, not of a part without the rest, not of the appropriation without the substitution.

Nor do we perceive the force of the objection to the validity of the transaction, because Homans intended to limit the transfer to the value of the bonds, to wit, six thousand dollars. The transfer was in form of the whole note, with a reservation to himself of the surplus over the amount of the bonds received from its proceeds. The note being indivisible, the legal title to a part could only be made by a

transfer of the instrument itself. The reservation of the surplus was not forbidden by any rule of law, and a court of equity would, and, in this case has, given effect to it.

But if we lay aside the doctrine of ratification as inapplicable, and assume that the transaction could not have been made by the parties after the failure of Homans, and, therefore, that the previous substitution could not then have been ratified, and treat the case as one of simple misappropriation of property of the defendant, still the trustees must fail in their suit. They took the property of the bankrupt subject to all legal and equitable claims of others. They were affected by all the equities which could be urged against him. Now, it is a rule of equity jurisprudence, perfectly well settled and of universal application, that where property held upon any trust to keep, or use, or invest it in a particular way, is misapplied by the trustee and converted into different property, or is sold and the proceeds are thus invested, the property may be followed wherever it can be traced through its transformations, and will be subject, when found in its new form, to the rights of the original owner or *cestui que trust.*

In the case of Taylor, assignee of a bankrupt, against Plumer,* this doctrine is well illustrated. There a draft for money was intrusted to a broker to buy exchequer bills for his principal, and the broker received the money and misapplied it by purchasing American stock and bullion, intending to abscond with them, and did abscond, but was taken before he quitted England. Thereupon he surrendered the stock and bullion to his principal, who sold the whole and received the proceeds. The broker became bankrupt on the day he received and misapplied the money, and his assignees sued for the proceeds of the stock and bullion. But the court decided that the principal was entitled to the proceeds as against the assignees, holding that if property in its original state and form is covered with a trust in favor of the principal, no change of that state and form can divest

---

* 3 Maule & Selwyn, 562.

it of such trust and give to the trustee, or those who represent him in right, any more valid claim in respect to it than he previously had; and that it makes no difference in reason or law into what other form, different from the original, the change may have been made, for the product of, or substitution for, the original thing still follows the nature of the thing itself, as long as it can be ascertained to be such, and that the right only ceases when the means of ascertainment fail.

It is contended that the doctrine of this case does not apply, because the note and mortgage were not purchased with the proceeds of the bonds taken, but were substituted for them. We do not think this fact takes the present case from the principle upon which the other proceeds, that property acquired by a wrongful appropriation of other property covered by a trust, is itself subject to the same trust. It cannot alter the case that the newly acquired property, instead of being purchased with the proceeds of the original property, is obtained by a direct exchange for it. The real question in both cases is, what has taken the place of the property in its original form? Whenever that can be ascertained, the property in the changed form may be claimed by the original owner or the *cestui que trust*, and assignees and trustees in bankruptcy can acquire no interest in the property in its changed form which will defeat his rights in a court of equity.

DECREE AFFIRMED.

Mr. Justice MILLER dissented.

