# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## MARKS AND ALS. v. SPENCER.

### APRIL 22d, 1886.

1. POST-NUPTIAL SETTLEMENT — *Husband* — *Witness.* — Though wife be dead, husband is not competent to prove what was the consideration of a *post-nuptial* settlement on her.

2. IDEM—*Evidence*—*Recitals.*—The consideration of *post-nuptial* settlement may be proved by parol. Recital in deed that consideration was paid by husband does not necessarily import that it was paid out of his funds, but only that it was paid *per* his hands.

3. CASE AT BAR.—The evidence here establishes that the settlement was upon consideration moving from wife's father, though deed recites "*it was paid by husband,*" and the settlement is upheld.

Appeal from decree of circuit court of Mecklenburg county, rendered April 8th, 1884, in the consolidated causes of *Marks, &c.,* v. *Spencer,* and *Spencer* v. *Marks, &c.* See *Finch* v. *Marks, &c.,* 76 Va. 207, and *Marks, &c.,* v. *Spencer,* decided February 9th, 1882, and not reported.

L. E. Finch and wife, by deed recorded January 28th, 1874, conveyed to F. R. Marks a lot in Boydton in trust for separate use of his wife, Caroline, for her life, with power of appointment by will, but on failure to appoint, to her children. The deed recites that the consideration was "paid by the said F. R. Marks." In 1876 A. B. Spencer filed his bill to enforce on said lot a judgment confessed to him by F. R. Marks and wife,

due him for house built by him on said lot, for which a mechanic's lien had been recorded. In 1878, Mrs. Marks and her children, by, &c., filed their bill against Spencer, denying validity of the judgment *as against her,* and averring that the lot was bought with proceeds of land given her by Aaron Markley, her father, and intended to secure a home for her. Spencer answered, averring that the lot was paid for with her husband's money, and was liable for his debts. The depositions of Marks and wife were taken, and excepted to as incompetent. The circuit court held, November 4th, 1878, that the judgment was *void as to her,* but that the lot was paid for with her husband's money, and was bound for the debts due Spencer, and ordered that Marks be made defendant. Marks answered, and other depositions were taken.

The circuit court, December 10th, 1879, rejected Marks' answer and the last depositions, overruled Mrs. M.'s motion to set aside last decree, and directed payment of the Spencer debt to Finch, his assignee, within thirty days, and in default of payment, a sale of the lot. From these decrees Marks and wife appealed to this court, which reversed the decrees on 9th February, 1882, and remanded the cause with directions that Spencer's answer be treated as a cross-bill; that Marks and his wife and children be allowed to answer it, and that the cause be reheard after opportunity to take further evidence. The answers were filed denying the allegations touching the liability of the lot for Marks' debt, and setting out the purchase of the lot with the proceeds of lands given her by her father. Depositions were taken tending to establish that the lot had been so purchased with funds furnished by Mrs. M.'s father. But the circuit court held that there was not sufficient evidence to establish that fact, and that the lot was liable for the debt due by F. R. Marks to Spencer, and ordered it to be sold.

From this decree Marks and wife obtained an appeal and *supersedeas* from one of the judges of this court.

*W. W. Henry*, for the appellants.

*W. T. Atkins, Pegram & Stringfellow* and *W. W. Gordon*, for the appellee.

Lewis, P., delivered the opinion of the court.

The only question necessary to be considered is, whether the consideration for the conveyance of the Boydton property by Finch and wife to F. R. Marks, trustee for Caroline Marks, his wife, and their children, moved from her or from her husband, the said F. R. Marks.

It is alleged by the appellee in his answer in the court below, which was treated as a cross-bill, that the consideration moved from the husband, and moreover that the settlement upon the wife was voluntary, fraudulent and void as against creditors of the husband. These allegations, however, are denied in the answers to the cross-bill, in which it is also averred that the property settled upon the wife was purchased with the proceeds of the sale of a certain tract of land, situate in Mecklenburg county, which had been given to the wife by her father as her separate property, independent of her husband.

The case, therefore, turns upon the facts, the most material of which will be briefly adverted to. Before, however, doing so, it is proper to say that F. R. Marks, notwithstanding the death of the wife, is an incompetent witness in the case, and that his deposition was rightly excluded by the circuit court. *William and Mary College* v. *Powell*, 12 Gratt. 372; *Warwick* v. *Warwick*, 31 Id. 70; *Smith* v. *Bradford*, 76 Va. 758.

In the argument of the case for the appellee, much stress was laid on the recital in the deed from Finch and wife, to the effect that the consideration for the conveyance was paid by Marks, from which it is argued that the money so paid was

the money of Marks. But we are unable to see that such a conclusion necessarily results from that recital. On the contrary, the payment by Marks of his wife's money is not at all inconsistent with the recital that the money was paid by Marks. In other words, the recital amounts to nothing more than that the money passed through the hands of Marks, without at all indicating the ownership of the money so paid. But whether this be the correct view of the matter or not, it is very clear that in equity the fact as to the ownership of the money may be shown by parol proof. *Cronie* v. *Hart*, 18 Gratt. 739. And we are of opinion that, upon the proofs in the record, the contention of the appellants is well founded.

It is not disputed that a tract of land in Mecklenburg county was given to Mrs. Marks by her father, which was sold to one George A. Endley; and it appears that the receipts for the purchase money were executed in her name; that is to say, they were signed "Caroline Marks, by F. R. Marks"; thus showing that in collecting the money, Marks was acting, not in his capacity as husband, but as agent for his wife. And why as agent? Because he knew that the land had been given to his wife as a separate estate, with which, as husband, he had nothing to do.

But, more satisfactory than this, is the evidence of Mrs. Markley, the mother of Mrs. Marks, who testifies as follows: "I know that Aaron Markley, my husband, gave to Caroline Marks a tract of land near Chase City, in the State of Virginia. It was to contain 150 or 155 acres, but it fell short, and is charged to her on the book at 140 acres, as an advancement as part of her share of our estate. I executed her a deed for the same, but before it was delivered to her the land was sold to Mr. Endley, and my husband and I executed a deed to him at the request of our daughter, Caroline." And when asked to state what interest, if any, in the land was given to the

husband, F. R. Marks, she answered: "Not any. The land was given to our daughter, Caroline Marks, as her individual property."

The witness, George Markley, a brother of Mrs. Marks, testifies as follows: "I was present when my father gave my sister, Caroline Marks, a piece of land near Chase City, Mecklenburg county, Virginia. It was to contain 155 acres, but did not hold out that much; I think it was only 140 acres. He gave me, at the same time, land of the same value, in Ashland county, Ohio. * * The land was given to my sister as her own property, and F. R. Marks has no interest in the land whatever."

To the same effect is the testimony of the witnesses, Susan Homan and Kate M. Wells, sisters of Mrs. Marks.

In addition to this, is the deposition of Aaron Markley himself, who testifies positively and emphatically that the house and lot in the town of Boydton, settled upon Mrs. Marks and her children, was purchased with the proceeds of the land given by him to his daughter, Mrs. Marks, which "she was to expend in buying a home for herself, which she did."

From all this testimony the inevitable conclusion is, that the land having been given by the father to his daughter as her separate estate, with which to provide for herself a shelter and a home, the same trust affected the proceeds arising from the sale of the land, which also followed and fastened itself upon the Boydton property in which the money was invested. 2 Story's Eq., section 1,258; *Cook* v. *Tullis*, 18 Wall. 332–341; *Warwick* v. *Warwick, supra.*

There is nothing in the record to show that the appellee, Spencer, had been the victim of fraud. His contract to build a house on the last mentioned property was entered into with F. R. Marks, and his mechanic's lien, which afforded an ample security for his debt, was duly recorded. It would seem from

the allegations of his bill in the case of *Spencer* v. *Marks and als.*, which was consolidated with this case, that he was then aware that Marks was a mere trustee. But be that as it may, he subsequently agreed to relinquish the mechanic's lien, if Marks and his wife would confess a judgment in his favor for the balance then due on account of the house, which they did. At that time, the deed to Marks, trustee, had been duly recorded; and, if because of the decision of this court on the former appeal, construing that deed and declaring that for certain irregularities, the judgment *quoad* the wife was void, the expectation of the appellee as to the effect of the judgment has been disappointed, he has no one but himself to blame for the consequences of his own voluntary and injudicious act.

It follows that the decree of the circuit court, holding that F. R. Marks is beneficially interested in the property in question, and subjecting it to the payment of the appellee's judgment, is erroneous, and must be reversed.

Lacy, J., and Hinton, J., dissented.

Decree reversed.