## Carl C. Knapstein, Assignee, v. John B. Tinnette.

1. DELIVERY—*What is Sufficient.*—A paper need not be actually delivered to the grantee, if the grantor when executing it intends it as a delivery, and this is known and understood by the grantee, and he and the grantor conduct themselves as if the estate had actually passed.

2. SAME—*No Formal Delivery Necessary.*—No formal delivery to the grantee in person is necessary. If the grantor in the deed intends when executing it to be understood as delivering it, that is sufficient.

3. SAME—*The Crucial Test.*—The crucial test in all cases is the intent with which the act or acts relied upon as the equivalent or substitute for actual delivery was done. This intent is to be gathered from the conduct of the parties, particularly the grantor, and all the surrounding circumstances.

4. SAME—*When Presumed.*—A delivery is sometimes presumed where there has been no change in the possession of the instrument; as, when a purchase has been consummated by the payment of the purchase money, and by formal execution and attestation of the deed in the presence of the purchaser, and nothing further remains to be done, the delivery will be presumed unless the contrary appears.

5. SAME—*A Sufficient Delivery.*—A financial agent held for his principal a mortgage for which, having disposed of it, he substituted two others upon his own property. He reported to his principal, and his act being ratified, he gave the mortgages to his son with directions to have them recorded and deliver them to his principal. This being done he shortly afterward made an assignment for the benefit of his creditors. The son disappeared. When making an inventory of the assets the mortgages were found on a pile of papers lying in the vault, where the father had access to them, and it appeared that after giving them to his son he had tried to sell one of them. *It was held* notwithstanding, that under the circumstances the substitution was complete, and the title to the mortgages had passed to the principal by a sufficient delivery.

6.  SAME—*Once Made, the Title Vests Completely.*—If a person to whom a deed is delivered by the grantor to be recorded, and then given to the grantee, fails to perform but leaves the deed in the possession of the grantor, it will be a good delivery nevertheless.  The title having once passed, the mere fact that the deed is afterward in the possession of the grantor can not divest the title.

7.  RATIFICATION — *Its Effect.* — Ratification operates precisely as though authority to do the act had been previously given.

8.  RECORDS—*Clerk's Duty in Making.*—The law does not leave it to the clerk to say what part of the record is material or related to the subject-matter in controversy.  He does not act judicially.  He can only make and certify a transcript of the record, and can not single out portions of it, and say that such parts as he copies are all that is material.

**Memorandum.**—Assignment for the benefit of creditors.  Appeal from an order of the County Court of Cook County; the Hon. FRANK SCALES, Judge, presiding.  Heard in this court at the October term, 1894, and affirmed.  Opinion filed February 25, 1895.

ALBERT H. MEADS, attorney for appellant.

VOCKE & HEALY, attorneys for appellee.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This is an appeal from an order of the County Court of Cook County, directing the appellant, the assignee of Conrad L. Niehoff, insolvent, to turn over to John B. Tinnette, the appellee, two certain unrecorded trust deeds, in the nature of mortgages, made by said Conrad L. Niehoff and his wife, the one conveying real estate on North Clark street, in the city of Chicago, and the other conveying real estate on 39th street, in the city of Chicago, and the two principal notes thereby secured, one for $7,000, and the other for $3,000, made by said Conrad L. Niehoff to his own order and by him indorsed in blank.

Both said notes and trust deeds bear date June 5, 1893, and the trust deeds were acknowledged June 6, 1893.  On June 8, 1893, the said Conrad L. Niehoff made an assignment for the benefit of his creditors.

The appellee had been accustomed, since 1885, to do his

banking business with said Conrad L. Niehoff, who was a private banker in Chicago, and, as his means accumulated, to rely upon Niehoff to invest his surplus earnings in mortgage securities. During all that time Niehoff was appellee's financial adviser, and attended to all his financial affairs, and the securities were left with Niehoff for safe keeping. As appellee testified, he trusted Niehoff as his father, and just left his money to be invested by him, and it was shown that Niehoff had previously often changed appellee's investments with the subsequent approval or ratification of appellee, and had theretofore done it faithfully. In November, 1891, appellee's securities and money had increased, so that by arrangement between appellee and Niehoff they were changed and put into a mortgage for $10,000, due July 25, 1893, made by Frank J. Niehoff, a son of Conrad L. Niehoff, at a cost to appellee of $10,118.33, including accrued interest; and such security was left in the custody of the said Conrad L. Niehoff. In May, 1893, Conrad L. Niehoff pledged that security to one Graham for a loan to himself of $10,000, which he never paid.

Appellee had no knowledge of the use by Niehoff for himself of the $10,000 mortgage, until June 7, 1893. On that day, which was the day of Niehoff's failure, the appellee went to Niehoff's bank with one Berlinger, his nephew, who was also a depositor in the Niehoff bank, and after Niehoff had satisfactorily answered their questions about the safety of their money on deposit, Niehoff, according to the testimony of both appellee and Berlinger, told appellee that he had changed the $10,000 mortgage into the two mortgages on his own property for $7,000 and $3,000, respectively, which are the subjects of this controversy, and that he had given the mortgages to his son Frank to get them recorded, and to give to appellee. To which appellee answered, inquiring what was the reason; that the mortgage was due the next month and that he wanted the money then; and that Niehoff replied that he could sell the mortgages; that he could always get the cash on that property, and that appellee then said to Niehoff that he was satisfied:

and he testified that he was, in fact, satisfied; that he then asked Niehoff for the $7,000 and $3,000 papers, and that Niehoff said that they were not there, that he had delivered them to his son, Frank, to get them recorded and give them to appellee, and that then the appellee went away. The bank afterward, on the same day, failed. A few days after the failure, the two mortgages and notes were found lying loose on top of other papers, of no particular value, on the shelf just inside the bank vault door, at the time the inventory of the bank's assets was taken.

It appears that Frank J. Niehoff was the only one then accessible who could open the vault, and it was he who opened it on the occasion that the papers were found inside. It is stated in appellee's brief, and is not contradicted, that Frank J. Niehoff left for parts unknown a few days after the bank failure, to avoid criminal prosecution, which probably explains why he was not called to testify. There is nothing inconsistent in the finding of the papers inside the vault, the combination to the lock of which was known to Frank, with the other fact stated by Conrad L. Niehoff that he had delivered the mortgages to Frank to be recorded and given to appellee.

The only evidence in the record that is at all inconsistent with the statement of Conrad L. Niehoff is the testimony of one Troost, that at a quarter before one o'clock on the day the bank failed, which was from three quarters of an hour to two and three quarter hours after the conversation between Niehoff and appellee and Berlinger, he, Niehoff, offered to sell to Troost the $3,000 mortgage, and that the mortgage was then lying there in Niehoff's possession. But we do not regard such evidence as of controlling weight.

If Frank had previously received the mortgages for the appellee, and for any reason had not taken them to the recorder's office, as directed, but had left them in the bank, where his father still had access to them at the time he offered to sell the one for $3,000 to Troost, or even though the mortgages were never delivered to Frank for the appellee, the mere fact that Conrad L. Niehoff offered one

of them for sale after the conversation with appellee, should not operate to destroy the effect of the substitution of them for the $10,000 mortgage previously effected between Niehoff and appellee. If by the transaction between Niehoff and appellee the title to the two securities had passed to appellee, a mere unexecuted intention by Niehoff to dispose of one of the securities to another person, without the consent of appellee, as he had previously done with the $10,000 mortgage, would not affect appellee's right to them as against Niehoff, nor as against his assignee in insolvency.

Under the circumstances of Niehoff's trusteeship and agency for the appellee we do not regard that an actual manual delivery from Niehoff to the appellee was necessary to give effect to the mortgages.

" The paper (deed) need not be actually delivered to the grantee  *  *  *  if the grantor when executing it intends it as a delivery, and this is known and understood by the grantee, and he and the grantor go on and act as if the estate had actually passed thereby." 3 Washburn on Real Prop. 300; 5 Am. & Eng. En. of Law, 447. See also, Guggenheimer v. Lockridge, 19 Southeastern Reporter 874.

" No formal delivery to the grantee in person was necessary. If the grantor in a deed intends, when executing it, to be understood as delivering it, that is sufficient. The intention of the party is the controlling element." Walker v. Walker, 43 Ill. 311.

" The crucial test, in all cases, is the intent with which the act or acts relied on as the equivalent or substitute for actual delivery was done. This intent, of course, is to be gathered from the conduct of the parties, particularly the grantor, and all the surrounding circumstances." Weber v. Christen, 121 Ill. 91.

" The deed takes effect from the first delivery, no matter when it comes to the hands of the grantee, or even if it never does.  *  *  *  The very essence of the delivery is the intention of the party." Bryan v. Wash, 2 Gil. 557.

" A delivery is sometimes presumed when there has been no change in the possession of the instrument, as when a

purchase has been consummated by the payment of the purchase money, and by the formal execution and attestation of the deed in the presence of the purchaser, and nothing further remains to be done. In such case the deed shall be presumed to have been delivered unless a contrary intention appears, notwithstanding it may be left in the hands of the grantor." Rogers v. Carey, 47 Mo. 232.

Tested by these principles we think there was a delivery of the two mortgages. Niehoff was the agent and bailee of the appellee. He had wrongfully appropriated to himself the $10,000 mortgage, the subject of bailment.

He executed two mortgages on his own property and at his next interview with appellee told him he had changed his $10,000 mortgage into them, and had set them apart for appellee by delivering them to one from whom appellee could get them after they had been recorded. To this arrangement the appellee assented and expressed himself satisfied.

If the person to whom they had been delivered failed to perform his duty in having them recorded, but left them in the bank, where they were afterward found, it was a good delivery nevertheless. The title having once passed to appellee the mere fact that one of them was afterward in the possession of Niehoff, as testified to by Troost, could not divest appellee of his right to them.

Although appellee did not know of the intention and act of Niehoff until after he had executed the two mortgages, he ratified it as soon as he was informed of it.

Such ratification operated precisely as though authority to do the act had been previously given. Cook v. Tullis, 18 Wall. 332.

The case just cited is similar in many of its facts to the one under consideration. The depository had substituted other securities for bonds that he had abstracted, and it was held that the owner of the bonds having ratified his act, could hold the substituted securities against the creditors of the depository in insolvency.

The fact of Niehoff having received the money from appellee's $10,000 mortgage, and substituted the new securi-

ties in place of that mortgage was equivalent to appellee having paid the consideration for the new mortgages, and, as said in the Missouri case, *supra*, there remained nothing further to be done. The custody thereafter of the papers by Niehoff, in the continuation of his agency, was the custody by appellee.

In conclusion, we do not see why an agent who has pilfered the securities of his principal may not substitute other securities of his own in place of those he has wrongfully taken, and when done and the act ratified by the principal, why, without any other delivery than a holding of the substituted securities for the benefit and use of the principal, just as he held the original securities, the principal may not rightfully claim the substituted securities as against any one but an innocent good faith purchaser. But if it be conceded that the record is deficient in showing a sufficient delivery of the two mortgages, we may, nevertheless, not reverse the judgment.

The certificate of the clerk of the County Court to the transcript filed here is that the transcript is a true, perfect, and complete copy of the record, " in the matter of Conrad L. Niehoff, insolvent, docket No. 10,857 of said court, so far as same relates to the petition of John B. Tinnette filed therein."

Now, we can not say from such a certificate that the County Court did not have before it matter not appearing in the record before us, justifying to a degree not known to us, the order complained of.

The law does not leave to the clerk to say what part of a record is material or related to the subject in controversy. He does not act judicially. He can only make and certify a transcript of the record, and can not single out portions of it and say that such parts as he copies are all that is material. Heffron v. Rice, 50 Ill. App. 332; Frink v. Phelps, 4 Scam. 559; Freeland v. Supervisors, 27 Ill. 303; Tolman v. Wheeler (5404, January 28, 1894); see, also, Golder v. Bressler, 105 Ill. 419.

We are bound, therefore, to affirm the judgment, and it will be so ordered. Affirmed.