## SMITH v. TOWNSHIP OF AU GRES, MICHIGAN.

(Circuit Court of Appeals, Sixth Circuit. November 7, 1906.)

### No. 1,544.

1. COURTS—ADOPTION OF PRACTICE OF STATE COURTS—WITNESSES—COMPETENCY—TRANSACTION WITH DECEASED PERSON.

In a proceeding in a federal court, the competency of a witness to testify to a transaction with a deceased person which is covered by Rev. St. § 858 [U. S. Comp. St. 1901, p. 659], is to be governed by that section, and not by the statutes of the state.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 900, 925, State laws as rules of decision in federal courts, see Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

2. SAME—DECLARATIONS OF DECEASED PERSON.

Rev. St. § 858 [U. S. Comp. St. 1901, p. 659], provides that in actions by or against executors, administrators, or guardians in which judgment may be rendered for or against them neither party shall be allowed to testify against the other as to any transaction or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify by the court. *Held* that, a bankrupt's trustee being privy with him, a witness was entitled to testify after the death of the bankrupt to admissions made by the bankrupt concerning his estate while he was yet owner thereof.

150 F.—17

**3. APPEAL—EVIDENCE—ADMISSION—PARTIES.**

The erroneous admission of evidence is not prejudicial where it is in line with other evidence which is competent and sufficient, and proves no new or other fact.

[Ed. Note—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 4161, 4162.]

**4. CONFUSION OF GOODS—LIENS.**

Where a wrongdoer knowingly mingles the property of another with his own in such manner that it becomes undistinguishable, the true owner may claim the whole mass, or, if it has been disposed of, may follow it or its proceeds for the purpose of fastening an equitable lien for the property of which he has been dispossessed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Confusion of Goods, §§ 7–9.]

**5. BANKRUPTCY—PROCEEDS OF FUNDS MISAPPROPRIATED BY BANKRUPT—RIGHTS OF CREDITORS—EQUITABLE LIEN.**

A bankrupt, who was a township trustee, used $4,400 of the township's money with which to purchase goods for sale in his business as a merchant, and so mingled the goods that it was impossible to distinguish them from the rest of his stock. *Held*, that the township was entitled at least to an equitable lien on the proceeds of a sale of the entire stock by the bankrupt's trustee, for the amount so appropriated; the general creditors of the bankrupt being only entitled to share in the residue, if any.

**6. SAME—MORTGAGES—PREFERENCES.**

Where a bankrupt, after having used funds belonging to a township with which to purchase merchandise, executed a mortgage on his stock of goods in favor of the township, such mortgage operated as a preference, and was unenforceable.

**7. SAME—LIEN—VACATION.**

Where a township was entitled to a preferred lien on a bankrupt's stock, arising out of the bankrupt's misappropriation of township funds, which he had used to replenish the stock, the township's lien was not lost by the taking of a mortgage on the stock which was unenforceable as a preference.

**8. SAME—COMPENSATION OF TRUSTEE.**

Where all of the proceeds of a sale of a bankrupt's assets were consumed in payment of preferred liens thereon, it was immaterial that such disposition deprived the trustee of all compensation for his services.

Appeal from the District Court of the United States for the Northern Division of the Eastern District of Michigan.

M. L. Courtright, for appellant.

T. A. E. & J. C. Weadock, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. This is an appeal from an order of the District Court allowing a petition of the township of Au Gres, a municipality of Michigan, praying for the establishment of a lien on certain assets of the bankrupt and an order for the satisfaction thereof from the proceeds arising from the sale of said assets.

The bankrupt had for several years prior to the proceedings in bankruptcy against him been engaged in the business of a retail merchant in Au Gres. At an election held in said township in April, 1903, he was chosen treasurer of the township, and thereupon he qualified as such, the United States Fidelity & Guaranty Company becoming surety on his bond. He received into the township treasury from his pred-

ecessor in office the sum of $3,191.26, and served for the ensuing year, collecting the taxes assessed for all purposes and disbursing and paying over the moneys in the treasury, except as next stated. At the close of his official year in April, 1904, he was short in his accounts $4,474.87, which sum he failed to refund to the township. On April 9, 1904, he gave a mortgage on his stock of goods to one Chamberlain as trustee to secure the township, or his surety, if it should be compelled to pay his shortage, for the amount thereof, reciting therein "that during his incumbency of that office he received funds belonging to such township aggregating a large sum, which moneys he has invested in his business, instead of keeping them separate and apart as required by law, and there is now invested in his business and property funds belonging to the township of Au Gres, Arenac county, Mich., aggregating the sum of, to wit, $4,400," and that it was his intention to treat the moneys which came into his hands as treasurer as trust funds. Chamberlain, the trustee, was an agent of the bonding company. On May 4, 1904, a petition in bankruptcy was filed against him by his creditors. At that time he was owing more than $5,000 to various parties of whom he had bought goods. He was adjudged a bankrupt, and Smith, the appellant, was chosen trustee. The trustee sold the stock of merchandise for the sum of $4,179.77. On September 3, 1904, the township filed a petition in the bankruptcy proceedings, alleging that the bankrupt had used the funds of the township in the purchase of the goods and merchandise which, or the proceeds of which, had come to the hands of the trustee, and that the township claimed a lien on the proceeds of the sale for the amount of its funds so converted, the sum claimed being $4,460.

On December 9, 1903, the bankrupt gave a mortgage on his stock of merchandise to secure Cole & Petty for a debt he owed them, which amounted, at the time when they filed their petition as next stated, to the sum of $1,094.29. Cole & Petty filed their petition in the bankruptcy court to enforce the lien of their mortgage on the proceeds of the sale by the trustee. While these petitions of the township of Au Gres and of Cole & Petty were pending, it was stipulated by those parties that they would share in their recoveries upon a footing of equality; that is to say, in the proportion of their respective interests, as the amount of those interests should be established. Upon the hearing, the lien of Cole & Petty was held valid by the referee and was allowed in the amount of $1,124.49. But the lien of the township was disallowed, and it was allowed as a claim of a general creditor. This was not what the petitioner asked. From the referee's opinion it appears that he accepted the recitals in the the mortgage of the bankrupt to the township as proof "that the funds of the township were invested by the bankrupt in his business and property." But it is also to be noted that it recited that there was then invested in his business and property funds of the township aggregating the sum of $4,400. The ground of the referee's decision was, as stated by him, that:

⁹    "There is no testimony and no evidence that any of the goods, wares or merchandise taken possession of by the receiver were purchased and paid for with moneys of the township of Au Gres."

There was other evidence touching the presence of the township's money in the assets, which we shall refer to later. The decision of the referee was taken before the district judge for review. So far as it related to the claim of Cole & Petty it was affirmed, but in respect to that of the township it was reversed ·and the lien held valid. The ·sum of the two claims of the township and of Cole & Petty amounting to more than the proceeds of the sale, it was ordered that they should be· paid upon the basis of their stipulation. The order sustaining the lien of the township is the order appealed from.

In addition to the recital by the bankrupt in the mortgage to the township in respect to his disposition of the township's money, it was testified· before the referee by Chamberlain, the trustee in the mortgage, that on the occasion of the giving of the mortgage the bankrupt "said he had used it in connection with his business in paying for stock," and that he was engaged "in the mercantile business." And an affidavit of the bankrupt made September 16, 1904, was produced in which he stated that of the township's funds he expended $4,640 in the general store business which he was conducting for the purchase of goods, wares, and merchandise. About one month after making this affidavit the bankrupt died. It was objected to the testimony of Chamberlain above recited that he was an incompetent witness in regard to the transactions between himself as agent of the bonding company and the bankrupt, because of a statute of Michigan excluding the testimony of one who has acted as an agent for one party to a transaction, where the other party has since deceased, relative to any matter equally within the knowledge of such other party. This objection is renewed here. But this proceeding was in a federal court, and, as the statute of the United States relating to the competency of witnesses as affected by their interest covers the subject and is paramount, the state statute is not the test, as the district judge rightly held. Rev. St. § 858 [U. S. Comp. St. 1901, p. 659]. The case of Hobbs v. McLean, 117 U. S. 567, 579, 6 Sup. Ct. 870, 29 L. Ed. 940, cited by him, is directly in point. Tested by the federal statute, the witness was competent. The trustee is privy with the bankrupt, and the admissions concerning his estate while he was yet the owner were competent evidence on the hearing.

With regard to the statements made by the bankrupt in his affidavit, we have some doubt. They were made after the trustee had succeeded· to the title of the bankrupt, and it is a close question whether the conditions which permit the declarations of a deceased· witness existed. But this testimony was in line with other evidence which was competent, and was of no new or other fact. Laying it aside, we should agree with the district judge on the essential facts.

Where, as in this case, a wrongdoer knowingly mingles the property of another with his own in .such manner that it becomes undistinguishable, the true owner may claim the whole mass, or if it has been disposed of, may follow it, or its proceeds, as the case may be, as long .as he can trace them, for the purpose of fastening an equitable lien' for the property of which he has thus been dispossessed. National Bank v. Insurance Co., 104 U. S. 57, 26 L. Ed. 693; Kantchbull v. Hallett, 13 Ch. Div. 696; Holder v. Western German Bank, 136 Fed.

90, 68 C. C. A. 554; Erie R. Company v. Dial, 140 Fed. 689, 72 C. C. A. 183. When the commingled property is of more value than that wrongfully taken, it is equitable that the excess should go to the credit- ors of the wrongdoer, although by the strict rule of the common law the whole mass might become the property of the innocent owner of the portion misappropriated. Justice requires that the rights of in- nocent third parties having acquired the property, or some interest in it, for value, should be protected, and against such the rule is not enforced. But here the trustee stands in the shoes of the bankrupt and has only his rights. Of course, we are speaking of the general rule, and do not need to notice the instances of conveyances and preferences fraudulent as against creditors. And the question is: What were the respective rights of the township and the bankrupt when the creditors filed their petition against him? The bankrupt's trustee says that it is impossible to find out what parts of the stock of goods contain the money of the township, and this was the difficulty which the referee found and which controlled his decision. But it was not for the township to make the distinction. As said by Chancellor Kent in Hart v. Ten Eyck, 2 Johns. Ch. 62, at page 108:

"If a party having charge of the property of others so confounds it with his own that the line of distinction cannot be traced, all the inconvenience of the confusion is thrown upon the party who produces it, and it is for him to dis- tinguish his own property, or lose it."

That case presented a state of facts which in this respect was quite similar to those which existed here. The fair inference is that the bankrupt took the money from time to time, purchased goods and mingled them with his stock, and out of his stock he sold parcels which were not distinguishable in respect of the means with which they were bought. From the beginning of his fraudulent intermixture of his own money and that of the township, or of goods which may have been bought with his own money and others bought with the money of the township, if the latter did not become the owner of the commingled stock, it had, at least, a lien upon it for reimbursement; and the con- tinuance of such transactions operated in the same way. In the cir- cumstances of the present case the township proceeded in the proper way by seeking an enforcement of the lien, and not by claiming the proceeds of the sale by virtue of the absolute ownership of the stock of goods, a course which, if the proceeds of the sale were more than the township's actual due, might work a hardship upon creditors. So the creditors have no cause to complain on that score. For these reasons, we are of the opinion that the trustee, standing on the right of the bankrupt, cannot successfully object to the lien claimed by the township upon the ground that the funds of the latter have been so commingled in the bankrupt's stock of goods that they could not be identified. The mortgage to the township operated as a preference, and could not be enforced. But we think its lien was not lost thereby, and that it may enforce it in this proceeding.

The trustee complains that the consequence of the order of the Dis- trict Court is that he is thereby deprived of compensation for his services. But the proceeds of the sale have left no surplus for the bankrupt's estate, and the township is not chargeable with the expenses

of administering the estate. What remedy the trustee, the referee, or other officers who have rendered services in the matter of the estate have against the petitioning creditors we are not called upon to inquire. The order of the District Court will be affirmed, with costs.

NOTE.—The following is the opinion of SWAN, District Judge, on reversing the findings of the referee:

SWAN, District Judge. Henry Reid was adjudged a bankrupt September 30, 1904, on the petition of creditors filed May 4, 1904. Reid was treasurer of the township of Au Gres, Arenac county, Mich., from April 4, 1903, to April 4, 1904. His business was that of country merchant carrying on a general store, and dealing, also, in connection therewith in hay, straw, wood, and lumber. On December 9, 1903, Reid and his wife executed a chattel mortgage to J. R. Petty for the benefit of Cole & Petty, bankers, of Au Gres, to secure payment of two promissory notes given by Reid to J. R. Petty aggregating $1,-365, including interest and discount. This mortgage covered the fixtures and stock of merchandise of Reid in the village of Au Gres, and was filed in the office of the township clerk of that village December 10, 1903. There was due on said mortgage debt March 20, 1905, as found by the referee, $1,094.29, after deducting payments made, and an item of $30, to which claim was waived. The mortgaged property was demanded by the receiver in this cause, was surrendered by the mortgagees, and sold by the trustee. The proceeds were paid into the registry of this court subject to the claim of the firm of Cole & Petty under the mortgage. The sale brought $4,179.77—much less than the appraised value. No money was advanced at the time the mortgage was given, and, although it recites that Reid was then indebted to the mortgagees, he owed them nothing, but it was in fact a mortgage for future advances which were made subsequently and prior to February 10, 1904, as agreed, and applied to satisfy indebtedness of Reid at the Old Second National Bank of Bay City. The referee allowed the claim of the mortgagee, Cole & Petty, at $1,094.29. To the ruling the trustee took exceptions and filed his petition for review thereof. There is nothing in the proofs reflecting on the good faith of the mortgagee or the bankrupt in the execution of this security. The mortgagee advanced the sums for which it is held as security. The transaction in no degree impaired the estate of the bankrupt, and the trustee cannot complain of it. Ex parte Ames, 1 Low. 561, Fed. Cas. No. 323. The proofs do not sustain the exceptions filed by the trustee to the allowance of the claim. The ruling of the referee thereon is accordingly affirmed and the claim allowed.

2. The claim of the township of Au Gres is that the bankrupt's stock in trade is impressed with a trust in its favor, and that its claim is entitled to priority over those of unsecured creditors because the bankrupt used the funds of the township which came into his hands as township treasurer of Au Gres in the purchase of his stock in trade to the amount of $4,460. The trustee objected to this claim on several grounds, most of which were not argued. He denies that the bankrupt was indebted to the township of Au Gres in any amount, and denies that it is entitled to priority over the general creditors. The referee finds that from April, 1903, to April, 1904, Henry Reid was treasurer of the township of Au Gres, and that at the expiration of his term of office he failed to account for $4,474.87; that this money was used by the said Henry Reid in connection with his business and in paying his bills; that the said Henry Reid had been engaged in a general store business in Au Gres, Mich., for upwards of 12 years prior to 1903; that in April, 1904, the said Henry Reid had a stock of goods amounting to between $8,000 and $9,000; that at the time of the filing of the petition in bankruptcy against said bankrupt he was indebted to various persons, firms, and corporations for goods, wares, and merchandise sold to him between April 1, 1903, and April 1, 1904, in the sum of upwards of $5,000.

The testimony of Harvey A. Chamberlain is that Reid admitted that he had commingled the township funds with his own money, and that those funds were used in his business to pay bills and in payment for his stock of goods. April 9, 1904—nearly a month before the petition in bankruptcy was filed—the bank-

rupt executed to Harvey A. Chamberlain, trustee for the township of Au Gres, a chattel mortgage upon "all and singular the goods and chattels of every name and nature owned by him wherever the same may be situate consisting in part of the stock of general merchandise in store on East Saginaw and Au Sable State Road in Au Gres and in transit thereto, all books of account, accounts and bills receivable owned by him; also all personal property ⁕ ⁕ ⁕ wherever the same may be. ⁕ ⁕ ⁕"

The mortgage recites the election in 1903 and qualification of Reid as township treasurer of Au Gres, and that during his incumbency of that office he received funds belonging to such township aggregating a large sum, which moneys he has invested in his business, instead of keeping them separate and apart as required by law, and there is now invested in his business and property funds belonging to the township of Au Gres, Arenac county, Mich., aggregating the sum of, to wit, $4,400. After providing for the sale of the property and the payment of the expenses of the trust, the mortgage makes it the duty of the trustee to pay the township of Au Gres the sum of money mentioned, or such other sum as shall be found due said township and his bondsmen, if they shall have paid the township, and the mortgagor repeats his admission of his conversion of the township moneys, stating that the same have been used in his (the mortgagor's) business and the purchase of the property "herein described." Chamberlain took possession of the mortgaged property, but on demand turned the same over to the receiver in bankruptcy by whom it was sold as stated. No claim is made by the township under this mortgage, nor is it assailed as an objection to the equitable lien claimed by the township.

The books of the township and the testimony of Chamberlain show that Reid, at the expiration of his term as township treasurer, was debtor to the township in the sum of $4,474.87 for moneys received by him as such treasurer. September 16, 1904, Reid made an affidavit acknowledging that he owed the township the sum of $4,640, and that amount of money was by him used in the general store business which he was conducting in the village of Au Gres. Reid died in November, 1904. The testimony of Chamberlain and the affidavit of Reid was objected to by the trustee as incompetent—the first because the matters testified to were equally within the knowledge of Reid and inadmissible under the Michigan statute of 1903; the second for the same reason, and on the claim that Reid made the admission under threat of criminal prosecution for embezzling the moneys of the village.

The competency of the testimony of Chamberlain is not affected by the state statute. The testimony was competent under the act of Congress (Rev. St. § 858 [U. S. Comp. St. 1901, p. 659]), notwithstanding the statute of Michigan. Hobbs v. McLean, 117 U. S. 579, 6 Sup. Ct. 870, 29 L. Ed. 940. See, also, King v. Worthington, 104 U. S. 46–50. 26 L. Ed. 652; Potter v. National Bank, 102 U. S. 163. 165, 26 L. Ed. 111; Whitford v. Clark County, 119 U. S. 525, 7 Sup. Ct. 306, 30 L. Ed. 500. Section 21a of the bankrupt act provides that "any designated person, including the bankrupt and his wife may be required to appear before the court or before a referee or the judge of any state court to be examined concerning the acts, conduct, or property of a bankrupt," etc. Act July 1, 1898, c. 541, 30 Stat. 552 [U. S. Comp. St. 1901, p. 3430]. The rules of evidence applicable to such examinations are those prescribed by the Acts of Congress. Cases, supra.

There is no evidence that Reid's affidavit was procured by threats of criminal prosecution. Chamberlain's testimony is that he asked Reid if he was willing to make affidavit that he had used the moneys "which had come into his hands as township treasurer ⁕ ⁕ ⁕ in connection with his business," and "he [Reid] said that he was, and this affidavit was presented to him and he said he could swear to it willingly, which he did"; that he "never made representations to Reid or anyone representing him that he was criminally liable; that such representations were made to Reid by the agent of the Fidelity & Guaranty Company about July 1, 1904." The affidavit was made September 16, 1904. Having his memory refreshed by the testimony of Townsend, Chamberlain states that the representations as to Reid's criminal liability was made in June, 1904—about three months before Reid's affidavit was made. There is no evidence, what those "representations" were, nor any testimony contradicting that of Chamberlain in any particular. So far as the record

shows, the admissions of Reid contained in the affidavit were entirely voluntary. He was chargeable with the knowledge of the statutes which makes it a crime punishable by imprisonment for a public officer to appropriate to his own use the public moneys in his hands. "Representations" to him of that fact alone prior to his admissions could not exclude them in a criminal prosecution against him for the offense. The rule in criminal cases is that to make an accused's statement admissible "the proof must be sufficient to establish that the making of the statement was voluntary; that is to say, that from the causes which the law treats as legally sufficient to engender in the mind of the accused hopes or fears in respect to the crimes charged, the accused was not involuntarily impelled to make a statement when but for the improper influences he would have remained silent." Bram v. United States, 168 U. S. 549, 18 Sup. Ct. 183, 42 L. Ed. 568. The cases upon this question are exhaustively reviewed in the opinion. See, also, Hopt v. Utah, 110 U. S. 574, 4 Sup. Ct. 202, 28 L. Ed. 262; Tucker v. United States, 151 U. S. 164, 14 Sup. Ct. 299, 38 L. Ed. 112.

The circumstances under which Reid's affidavit was made meet the requirements of the rule just quoted—to make it admissible in a criminal case. In Michigan it is held that a confession is presumed to be voluntary in the absence of evidence to the contrary. People v. Barker, 60 Mich. 277, 27 N. W. 539, 1 Am. St. Rep. 501. A proceeding in bankruptcy is not a criminal case, although it may disclose acts of criminality. It is simply the procedure for the collection and distribution among creditors of the bankrupt's estate. The affidavit is admissible not as a confession of Reid's criminality, but as an admission of his own and the liability of his estate for moneys in his hands because of the disposition he made of them. As there is no evidence that would justify its exclusion as a confession in a criminal proceeding, for a stronger reason it is competent against the bankrupt's estate as an acknowledgment of the facts it recites affecting the title of the assignee to the property in controversy. The trustees "stand in the place of the bankrupt; his rights are their rights; and theirs, like the liens of judgments at law, are subordinate to all the prior liens legal and equitable upon the property in question." Gibson v. Warden, 14 Wall. 248, 20 L. Ed. 797; Cook v. Tullis, 18 Wall. 332–341, 21 L. Ed. 933. "As to everything except fraudulent conveyances and fraudulent preferences under the bankrupt law, he takes by his assignment as a purchaser from the bankrupt with a notice of all outstanding rights and equities." Dudley v. Easton, 104 U. S. 103, 26 L. Ed. 668; Donaldson v. Farwell, 93 U. S. 634, 23 L. Ed. 993; Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405. The facts made competent the affidavit of Reid and his admissions to Chamberlain. There is no evidence to contradict either.

The property of the bankrupt, therefore, came into the hands of the trustee burdened with the equitable lien of the township if it has traced its funds into the stock in trade of the bankrupt which came into the hands of the trustee. The referee has found that the proofs fail to show such conversion by the bankrupt, and rejected the claim of the township. This conclusion must have been based upon the rejection of Reid's oral admissions, his affidavit, the recitals in his mortgage to Chamberlain, and the testimony of Chamberlain. If this evidence is creditable, it establishes beyond a reasonable doubt that the township's money went into the stock in trade of the bankrupt which came into the hands of the trustee. It is not claimed or shown that it was used to purchase other property, real or personal, of the bankrupt, or that he made any other disposition of it than that he stated. If any weight whatever is to be given to the evidence adduced by the township, it traces the trust funds beyond a peradventure to the specific property upon which the township claims a lien. When Reid entered upon his duties as township treasurer April 3, 1903, it is shown without contradiction that there was turned over to him $3,191.26—the aggregate of the various township funds. At the close of his term, April 4, 1904, the amount of township funds he had received and should have had, including the $3,191.26 mentioned, deducting all payments made by him in the course of his official duties, was the sum of $4,400. This Reid stated under oath he "paid, laid

out, and expended in his business for the purchase of goods, wares, and merchandise, * * * and that amount of money was by him used in the general store business which he was conducting at the village of Au Gres, Arenac county." This fixes beyond controversy the periods between which the conversion of the township funds occurred. There is no evidence what, if any, part of the goods and merchandise so purchased had been sold in the course of the bankrupt's business during that period. The trustee holds the proceeds of sale of the identical stock in trade of the bankrupt into which this money was wrongfully converted.

This is not a case where the claim of the cestui que trust against the insolvent trustee's estate is predicated on the ground that the misapplied securities have gone to swell the bankrupt's estate, and therefore the equity of the cestui que trust to reimbursement from the estate of the bankrupt is paramount to the claim of general creditors. If that only were its extent, a different question would be presented. In his report the referee says: "The only testimony as to what was done with the money of the township, so far as it was invested in the business of the bankrupt, is that of Harvey A. Chamberlain, and his testimony is that the money was used in connection with his business in paying for stock." The proofs, however, are more specific than this conclusion, as we have seen. Mentioning in a cursory way the recitals in Reid's chattel mortgage to the township, and in his affidavit, he obviously denies their competency upon grounds above discussed and overruled, as well as that of the testimony of Chamberlain, saying that "it does not appear that the goods and property turned over to the receiver were purchased with the moneys of the petitioner. * * *" The cases cited for the legal conclusions of the referee, viz., Fire & Water Commissioners v. Wilkinson, 119 Mich. 655, 663, et seq., 78 N. W. 893, 44 L. R. A 493, and Frelinghuysen v. Nugent (C. C.) 36 Fed. 237, are in entire accord with the great weight of authority expository of the right to follow the trust funds when traced into specific property. In the first the authorities, federal and state, and English, are fully reviewed, and in both the same equitable doctrine is declared which is ruled in National Bank v. Insurance Company, 104 U. S. 54, 26 L. Ed. 693. See, Cook v. Tullis, 18 Wall. 332, 21 L. Ed. 933.

If it could be justly claimed that the proofs failed to show that the funds of the township had gone into the property of the bankrupt, as was the fact in Frelinghuysen v. Nugent, supra, the finding of the referee upon the evidence ought not to be disturbed, nor should it be set aside upon a contradicted question of fact unless the referee's error is clear. Oteri v. Scalzo, 145 U. S. 589, 12 Sup. Ct. 895, 36 L. Ed. 824. There the facts were not disputed, yet they were disregarded and a conclusion to the contrary was reached. No authority has been cited or found requiring the cestui que trust to show the apportionment of the trust fund between the various departments of the bankrupt's business. It is sufficient to charge the property with an equitable lien in favor of the township that its moneys went into stock in trade of the bankrupt which came into the hands of the trustee. Cavin v. Gleason, 105 N. Y. 256, 11 N. E. 504. It is for the trustee to show that specific portions of that property were not purchased with the trust funds, and there is no evidence to that effect, except the single fact that the inventory did not include Reid's lumber. This is, however, of no significance. "The lien of the cestui que trust is upon the mass for the value of the things converted." Erie R. R. Co. v. Dial (C. C. A. Sixth circuit, November 7, 1905), 140 Fed. 689, 72 C. C. A. 183. It would be difficult, if not impossible, to establish more satisfactorily the use made by the bankrupt of the township moneys than has been done by his admissions, oral and by affidavit, and the recitals of the mortgage He alone knew what he had done with them. There is no evidence that he lost them by bad investments, speculation, gambling, robbery, in the payment of debts, or otherwise than as he stated. In National Bank v. Insurance Company, 104 U. S. 67, 26 L. Ed. 693, the court quoted with approval from Frith v. Cartland, 2 Hen. & M. 417, 420, as "established doctrines" two rules: (1) "So long as the trust property can be traced and followed into other property into

which it has been converted that remains subject to the trust"; and (2) "that, if a man mixes trust funds with his own, the whole will be treated as the trust property, except so far as he may be able to distinguish what is his own."

As the conversion of such funds into other property does not impair the right of the beneficiary to claim the substituted property, and as the funds of the township are traced into the property of the bankrupt which has come into the hands of the trustee, the finding of the referee is reversed, and the claim of the township is allowed and decreed to constitute a lien upon the property prior in right to the claims of unsecured creditors of the bankrupt.