## DUDLEY *v.* EASTON.

1. Except so far as they may directly or indirectly affect the fund to which an assignee in bankruptcy is entitled for distribution under the law, he has no interest in the controversies among secured creditors, nor can he enforce contracts between the bankrupt's creditors.
2. It is not his duty to protect the dower rights of the bankrupt's wife against the consequences of her own acts prior to the bankruptcy, or to inquire whether homestead rights can be claimed as against incumbrancers whose title is superior to his own.
3. *McHenry* v. *La Société Française* (95 U. S. 58) approved.

APPEAL from the Circuit Court of the United States for the Eastern District of Missouri.

The facts are stated in the opinion of the court.

*Mr. John D. S. Dryden* for appellant.

*Mr. J. M. Krum* and *Mr. C. H. Krum, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This is an appeal from a decree dismissing on demurrer a bill filed by Dudley, the assignee in bankruptcy of William P. Bush. The case stated in the last amended bill is substantially as follows:—

On the 10th of October, 1873, Easton and Stillwell severally

sued Bush in the Circuit Court of Monroe County, Missouri,
— Easton on a note for $3,000, and Stillwell on one for
$5,000. In due course of proceeding, judgments by default
could be taken in each of the suits on the 30th of October.
Bush was at the time laboring under great financial embarrass-
ment, although, as he thought, actually possessed of lands and
other property greatly in excess of his debts. On the 24th of
October, after service of process upon him in the suits, he met
a portion of his creditors, including Easton and Stillwell, and
made known to them his embarrassed condition, and the pen-
dency of the suits. He also stated that Easton and Stillwell
would, by obtaining judgments, secure an advantage over his
other creditors, and he was desirous that all should share
equally in his property. He thereupon proposed that all the
creditors present should accept in satisfaction of their respec-
tive debts his notes, payable in equal instalments in one, two,
three, and four years from date, with interest at the rate of
ten per cent, secured by a mortgage executed by himself and
wife, to a trustee to be selected by the parties, on all his real
estate, and that Easton and Stillwell should dismiss their suits
and not take judgment against him. It is then averred that
all the creditors present, including Easton and Stillwell, agreed
with each other and with him to accept the notes and secu-
rity as proposed, and extend the time, and that he agreed to
give the notes and make the mortgage. As part of the agree-
ment thus entered into, Easton and Stillwell were to dismiss
their suits.

Relying on this agreement, Bush set about the preparation
of his notes and mortgage, and paid no attention to the suits.
He did not appear in court, or make any defence, as he other-
wise would have done, by setting up the agreement for an
extension. Consequently, at the proper time, October 30,
judgments were taken against him by default, of which it is
averred he had no actual notice until November 3, after the
term of the court had closed.

Without any unnecessary delay, Bush executed his notes
and a mortgage to the defendant Logan as trustee, in accord-
ance with the agreement which had been made. They were
all dated October 29, but the mortgage did not take effect

until after the judgments were rendered. For this reason, the lien of the judgments was prior to that of the mortgage. All the creditors represented at the meeting, except Easton and Stillwell, accepted the notes, and now retain them. They are not parties to this suit, unless they are represented by the assignee. Easton and Stillwell refused to carry out their agreement, and they rely on their judgments and the priority of lien thereby acquired.

On the 28th of February, 1874, proceedings in bankruptcy were begun against Bush by some of his creditors, which resulted in an adjudication of bankruptcy and the appointment of Dudley as assignee, to whom, on the 24th of March, the general assignment was made under the law. This bill was subsequently filed against Easton, Stillwell, Logan, the trustee under the mortgage, and Bush and wife. It sets forth the foregoing facts in detail, and then avers: —

" Your orator further says that at the time of the making of said agreement of extension and of said deed of trust said Bush had a large amount of property, not included or intended to be included in said deed, sufficient in value to satisfy all the debts owing by said Bush to his other creditors, who were not parties to said agreement; that said deed was not made, nor was said agreement entered into, by said Bush with any intent to give a preference thereby to the parties to said agreement or any of them over his other creditors, or with the intent thereby to convey his said property or any of it in fraud of the provisions of said act of Congress or the acts amendatory thereof, but solely under the belief on the part of said Bush that by obtaining such extension of time of payment as aforesaid he would be enabled to pay all his creditors their debts in full, together with interest at the rate of ten per cent per annum; that the entire indebtedness secured by said deed of trust, including that to said Stillwell and Easton, amounted to $40,394.70, and that all the lands mentioned in said deed were then thought to be worth, and in fact were worth, the sum of $50,000, especially if a reasonable time could be obtained to negotiate a sale of the same; that among the property described in said deed of trust was that occupied by said Bush and his family as a homestead, out of which he was entitled to

have set apart to him as exempt from levy and sale under execution a homestead of the value of $1,500 under the laws of this State; that because of the release of the dower interest of the defendant, Emma C. Bush, wife of said bankrupt, in all of his lands described in said deed, and the waiver and conveyance of all his right to exemption of a homestead given and made by said deed, and for other good and sufficient reasons, it is to the interest of all of the creditors of said bankrupt's estate, save only said Easton and Stillwell, that the said deed of trust should be recognized, confirmed, and enforced by your orator as assignee as aforesaid, and in fact this bill is filed by your orator at the request and by the direction and on the behalf of all the creditors of said Bush, whether secured or unsecured, excepting only said Easton and Stillwell."

The prayer of the bill is as follows : —

" Wherefore your orator prays that a decree may be made by your honorable court requiring the said defendants, Easton and Stillwell, on their part respectively to execute and perform said agreement, to accept said notes, and the benefit of said trust mortgage respectively, in satisfaction of the demands which they respectively had against said William P. Bush on the 29th of October, 1873, and then sued for in the said Monroe Circuit Court, and severally to execute to your orator a release of all lien and claim upon any real estate which was of said Bush at the time of the commencement of said proceedings in bankruptcy against said Bush, which they respectively may have under or by virtue of said several judgments of said Monroe Circuit Court, or under or by virtue of the levy of any execution issued thereon, and that said judgments as to said Bush may be set aside and for naught held and esteemed respectively, and that the said defendants, Easton and Stillwell, may by said decree be forever enjoined and restrained from enforcing said judgments respectively, or from claiming any benefit or lien thereof as against any property which belonged to said Bush at the time of the rendition thereof, and that he may have all such other and further relief as to equity belongs and the circumstances of his case may require."

The first question to be settled is, whether an assignee in bankruptcy can sue for the relief which is asked. The inquiry

is not whether the creditors who accepted the notes and mortgage can compel Easton and Stillwell to give up their judgment liens and come in equally with them under the mortgage, nor whether the bankrupt or his wife can be relieved against their mortgage of their homestead or dower rights, but whether the assignee in bankruptcy stands in such a relation to the alleged agreement and the parties that he can require the agreement to be carried into effect, if called upon for that purpose by all the creditors.

An assignee in bankruptcy represents the general or unsecured creditors, and his duties relate chiefly to their interests. He is in no respect the agent or representative of secured creditors, who do not prove their claims. He need not take measures for the sale of incumbered property, unless the value of the property is greater than the incumbrance. He has nothing to do with the disputes of secured creditors among themselves, unless it becomes necessary for him to interfere in order to settle their rights in the general estate, or to determine whether there is an excess of property over what is required for the purposes of the security. *McHenry* v. *La Société Française*, 95 U. S. 58. He cannot enforce contracts between creditors, except so far as they may directly or indirectly affect the fund he is to get into his hands for distribution under the law. Neither is it any part of his duty to protect the dower rights of the wife of the bankrupt against the consequences of her own acts before the bankruptcy, or to inquire whether the bankrupt or his wife can claim homestead rights as against incumbrancers whose title is superior to his own. As to everything except fraudulent conveyances and fraudulent preferences under the bankrupt law, he takes by his assignment, as a purchaser, from the bankrupt, with notice of all outstanding rights and equities. Whatever the bankrupt could do to make the assigned property available for the general creditors he may do, but nothing more, except that he may sue for and recover that which was conveyed in fraud of the rights of creditors, and set aside all fraudulent preferences. As to such preferences and conveyances he has all the rights of a judgment creditor, as well as the powers specifically conferred by the bankrupt law.

It may be for the interest of the creditors who carried out

the agreement now under consideration for an extension of time, and received notes under the mortgage, that Easton and Stillwell should vacate their judgment liens and forego the preference they thereby acquired; but we are unable to discover from anything stated in the bill how the interests which the assignee represents would be specially benefited by making Easton and Stillwell share equally with the other creditors rather than maintain their preference. The object of the bill is not to set aside any fraudulent preference which has been obtained over the general creditors of the estate, but to settle the rights of secured creditors as between themselves. In no event is the property to be relieved from any part of the present incumbrance. The only question is how, as between the several incumbrancers, it shall be appropriated. From anything which appears in the bill, we cannot say that the overplus of the property, after the debts are paid, will be more, whether the distribution is made in one way or the other. If there should be a deficiency, and some part of the secured debt be proved up against the general estate, it is not material to the general creditors whether the unpaid part of the debt belongs to all the secured creditors, including Easton and Stillwell, equally, or to the others alone. In either event, the amount chargeable on the general fund will be the same.

We have not overlooked the fact that in the bill it is averred that when the mortgage was made the lands included were thought to be worth, and in fact were worth, the sum of $50,000, especially if a reasonable time could be obtained to negotiate a sale, and also that "it is to the interest of all the creditors of said bankrupt's estate, save only Easton and Stillwell, that the said deed of trust (mortgage) should be recognized, confirmed, and enforced by your orator as aforesaid;" but this, in our opinion, is not enough. The way in which the interests of the general creditors would be injuriously affected by enforcing the judgment liens rather than the mortgage should have been stated, so that the court can see whether it is sufficient to entitle the assignee to the relief he asks. The request of all the creditors, that the assignee institute and carry on the suit, amounts to nothing, unless the interests which he in law represents are such as to make it his duty to do what is wanted.

It may, perhaps, be fairly inferred from what is stated in the bill, that the bankruptcy of Bush was brought about by the failure of Easton and Stillwell to carry out their agreement. Because he could not get the time he wanted he subjected himself to the proceedings which were instituted against him, but that furnishes no ground for the relief which is now asked. If Easton and Stillwell are compelled to give up their judgment liens and take under the mortgage, neither the adjudication in bankruptcy nor the assignment under it will be vacated. The assignee will be compelled to go on with the administration of his trust, whether he succeeds in this suit or not, and he has not shown to us in any precise or definite way that the relief he asks will change in any material respects the result which will otherwise flow from the conversion of the assets as they now stand into money for the purpose of distribution under the law. So far as we can discover, the only object of the assignee is to compel Easton and Stillwell to share equally with the other secured creditors in the proceeds of the mortgaged property, instead of retaining their present preference, and this, too, without showing that the fund he is to gather in for distribution will be in any manner affected thereby. Clearly he has no interest in saving the dower rights of Mrs. Bush, or in protecting the homestead of the family from sale under the mortgage which has been executed. A fraud may have been perpetrated on the bankrupt and his wife, but it is not one which the assignee has any official interest in redressing.

As what we have said is decisive of the case, without considering any of the other questions discussed in the briefs, we affirm the decree below.

*Decree affirmed.*