In re NATIONAL BOAT & ENGINE CO.

BUTTERFIELD v. WOODMAN.

(District Court, D. Maine. July 7, 1914.)

No. 271.

1. BANKRUPTCY (§ 11*)—POWERS OF COURT—ADMINISTRATION OF ESTATE.

Under the broad powers conferred by Bankr. Act July 1, 1898, c. 541, § 2, (7), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3421), to cause the estates of bankrupts to be collected, reduced to money, and distributed, and to determine controversies in relation thereto, when property has thus become subject to a court of bankruptcy, jurisdiction exists to pass on questions relating to its disposition, and to determine the extent and character of liens thereon and rights therein, and to that end to bring in and substitute additional parties whenever necessary for a complete determination of the matter in controversy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 11; Dec. Dig. § 11.*]

2. BANKRUPTCY (§ 267*)—SALE OF PROPERTY FREE OF LIENS—PROCEEDINGS FOR DISTRIBUTION OF PROCEEDS.

As a consequence of the power of a court of bankruptcy to order the sale of property of a bankrupt free of liens, it has jurisdiction to determine the validity, extent, and relative priority of liens on the proceeds which stand as a substitute for the property sold, and in proceedings for the distribution of such fund, the trustee should appear and protect the rights of the estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 371, 380; Dec. Dig. § 267.*]

3. BANKRUPTCY (§ 338*) — CONTESTED CLAIMS — HEARING BEFORE REFEREE — EVIDENCE.

The testimony of an officer of a bankrupt corporation, taken on his general examination under Bankr. Act July 1, 1898, c. 541, § 21a, 30 Stat. 552 (U. S. Comp. St. 1901, p. 3430), but not directed to any particular issue, is not admissible on the hearing of a contested claim before the referee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 525–527; Dec. Dig. § 338.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. BANKRUPTCY (§ 175*)—VALIDITY OF LIENS—PLEDGE OF BONDS BY CORPORATION FOR INVALID CONSIDERATION.

    A corporation executed to claimant a trust deed on its property to secure him against contingent liability on indorsements for the company, and by express agreement such deed was withheld from record for the distinct purpose of avoiding publicity and injury to the credit of the company. Such company was consolidated with others into the bankrupt corporation to which it conveyed its property by warranty deed and bill of sale which did not mention the trust deed. In consideration of its surrender bankrupt transferred in trust for claimant certain of its mortgage bonds. *Held*, that the trust deed was fraudulent and void, and formed no basis for a valid transfer of the bonds.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 247, 248; Dec. Dig. § 175.*]

5. BANKRUPTCY (§ 267*)—VALIDITY OF LIEN—PLEDGE OF MORTGAGE BONDS BY CORPORATION.

    A pledge of its mortgage bonds by a bankrupt corporation as security for notes given by another corporation, whose property the bankrupt had taken over with an assumption of its indebtedness, *held* valid, and the holder entitled to share in the proceeds of the mortgaged property.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 371, 380; Dec. Dig. § 267.*]

In Bankruptcy. In the matter of the National Boat & Engine Company, bankrupt, wherein Walter I. Woodman is trustee. On petition by William W. Butterfield to review decision of referee disallowing claims. Reversed in part.

See, also, 198 Fed. 407.

Wm. D. Washburn, of Chicago, Ill., Wm. Carpenter, of Muskegon, Mich., and Williamson, Burleigh & McLean, of Augusta, Me., for petitioner.

Woodman & Whitehouse, of Portland, Me., for trustee.

HALE, District Judge. This case comes before the court upon the petition of William W. Butterfield to set aside the finding of the referee in bankruptcy, upon the allowance of claims in which the petitioner holds the only beneficial interest. The proofs of debt embrace the following items:

Cross, Vanderwerp, Foote & Ross, as trustees for William W. Butterfield, $88,000, with 6 per cent. interest coupons.

William W. Butterfield, assignee of National Lumberman's Bank, holding also Astor Trust Company bonds as security, $12,000, $10,456.40, with interest.

Mary E. McCracken, holding also $10,000 Astor Trust Company bonds as security $9,000, with interest.

Hackley National Bank, holding also $10,000 Astor Trust Company bonds as security, $10,000, with interest.

George Boyce, $4,000, with interest.

Old National Bank, $3,000, with interest.

Two general classes of claims are presented by the record. The first class consists of:

    (a) The claim appearing in the proof as represented by Cross and others. trustees, amounting to $88,000.

    (b) The claim of Mary E. McCracken upon $10,000 of bonds of the

bankrupt company, that of the National Lumberman's Bank upon $12,000 of such bonds, and of the Hackley National Bank upon $10,000 of the bonds, making in all a claim of $32,000 upon said bonds. The first class (consisting of the above two claims) is proved for a pro rata share upon the face value of the bonds and interest, out of the proceeds of the assets covered by the lien of the so-called Astor Trust Company mortgage.

The second class consists of the claim of the petitioner, Mr. Butterfield, by virtue of the assignment of certain notes given Mary E. McCracken, the National Lumberman's Bank, the Hackley National Bank, George Boyce, and the Old National Bank, amounting in all, upon their face, without interest, to $39,000. This second class of claims is for a dividend out of the general assets of the estate in bankruptcy, upon the total amount of the claims, without interest, after the application thereto of the pro rata share, out of the assets covered by whatever lien is found to exist upon the bonds.

1. At the threshold of the proceedings, however, the petitioner makes the contention that the trustee in bankruptcy is not a proper party in this proceeding, and should not be allowed to appear in court and object to the claims offered for proof; that, inasmuch as, by its terms, the Astor Trust mortgage covers all the property of the bankrupt estate, therefore the trustee in bankruptcy has no interest whatever in any of the issues involved in these proceedings, and has no right to appear in court and object to any of the claims offered for proof, he being a representative of the unsecured creditors only; and, it appearing that all the property of the estate will be insufficient to pay the trust mortgage in full, there can in no event be anything for the general creditors.

The record shows that, although the original Astor Trust Company mortgage purports to cover all the property of the National Boat & Engine Company, a serious controversy arose between the trustee under the mortgage and the trustee in bankruptcy. The question presented, as stated by counsel, was whether the Astor Trust Company mortgage legally covered and included certain of the personal property, by reason of a failure to record the mortgage as to such personal property, and by reason also of inability to show that any of the after-acquired property was purchased with the proceeds of the mortgage, and for certain other reasons. This controversy came before this court; it appearing that the claim of the invalidity of the mortgage had some foundation, the court sustained the ruling of the referee to the effect that the referee had the right, under the circumstances of the case, to order a sale of the property free from the alleged lien of the Astor Trust Company mortgage.

In the course of the trial of the cause, a matter of some significance has been brought to the attention of the court. The trustee was authorized to sell, and did sell, a part of the assets of the National Boat & Engine Company to a certain reorganization committee for the sum of $250,000; this sale was authorized by the court. The terms of the offer for the purchase of the property are before the court. It appears that a certain portion of the purchase money was paid down,

and that the balance of the purchase price became due and payable upon the final settlement of the estate. On account of such balance, the trustee was authorized to apply any sums due by way of dividends, or otherwise, upon all old bonds, proofs of debt, and claims deposited by the reorganization committee; and if such sums should be insufficient, neither the reorganization committee nor a new company to be formed should become liable for any deficiency; but if the sums realized from the sale or redemption of bonds or dividends, or other disposition of claims against the old company, and the bonds issued by the old company which may have been deposited, should, when added to the cash payments provided for, amount to more than $250,000, any surplus should be paid by the trustee to the new company, or its successors. It was further provided that, in addition to the payment therein provided, there should also be delivered to the trustee, as security for the payment of the purchase price, 6 per cent. 20-year gold bonds heretofore issued by the bankrupt corporation, amounting at par value to at least $300,000, of which not more than $110,000 should be of the class of bonds of the National Boat & Engine Company known as "collateral bonds." These $300,000 of bonds were delivered to the trustee as collateral security for a part of the purchase price of $250,000; the trustee became the pledgee of these bonds; the reorganization committee retained an equity in them. It is clear, then, that the bonds were not surrendered to the trustee, or canceled by this action. It is urged that, as holder of these $300,000 of bonds, the trustee in bankruptcy has a further interest to protect in these proceedings. I am not called upon by anything in the record to pass upon this question. I base my finding on other grounds. I have stated the facts in order to show the attitude of all the parties to the controversy. It was brought to my attention at the hearing that an agreement was entered into between the trustee under the mortgage and the trustee in bankruptcy for a division of the proceeds arising from the sale to the reorganization committee. After hearing the parties, and duly considering the terms of the sale, the court ordered the sale to be made free and clear of any lien under, and by virtue of, the Astor Trust mortgage. The record shows, then, that there was a controversy between the trustee in bankruptcy and the trustee under the mortgage as to the title to property sought to be sold; that by reason of this controversy a sale of the property was ordered, free of lien, and this sale was made.

[1, 2] The broad powers conferred in section 2 (7), of the Bankruptcy Act, authorize a bankruptcy court to cause the estate of a bankrupt to be collected, reduced to money, and distributed, to determine controversies in relation thereto, and to bring in and substitute additional parties whenever necessary for the complete determination of a matter in controversy. When property has thus become subject to a bankruptcy court, jurisdiction exists to pass upon questions relating to the disposition of the property, and to determine the extent and character of liens thereon, or rights therein. Whitney v. Wenman, 198 U. S. 539, 552, 25 Sup. Ct. 778, 49 L. Ed. 1157; Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405. In pursuance of this general doctrine of the federal courts, it has been repeatedly held

that a fund derived from the sale of property free of liens will stand as a substitute for the property sold, and will be held by the trustee for the. benefit of those holding bona fide claims and liens to the extent their respective interests may appear; as a consequence of the power to order a sale free of liens, the court has jurisdiction to determine the extent and validity, and the relative priority of claims of lienholders to the proceeds. The court should also make provision for protection of the rights of the several lien creditors in the fund derived from the sale, in order that such creditors may prosecute their claims to a preference against the fund; and it follows that the trustee in bankruptcy should appear and protect the rights of the estate in proceedings for the distribution of the fund derived from such sale. Chauncey v. Dyke Bros., 119 Fed. 1, 55 C. C. A. 579; In re Littlefield, 155 Fed. 838, 84 C. C. A. 72; Collier on Bankruptcy (9th Ed.) page 1034, and cases cited; Woodman on Trustees in Bankruptcy, page 482, and cases cited. In speaking for the court in the Eighth circuit, in Chauncey v. Dyke, supra, Judge Thayer said:

"If, in the exercise of its customary jurisdiction, the Bankrupt Court obtained a lawful custody of the res to which the liens related, or of a fund realized from its sale, then the duty which was thereby devolved upon it of distributing the fund among those to whom it rightfully belonged did empower it to determine the relative priorities of the conflicting claims to the fund." The claimant relies on Dudley v. Easton, 104 U. S. 99, 26 L. Ed. 668.

In that case the claimants did not come into the Bankruptcy Court, and did not prove their claims; the Supreme Court said that they could not be drawn into court against their will. In the case before me, the claimant has already proved his claim, and presented himself in court, seeking a dividend out of the fund in its custody. The court has control of the fund to which the liens relate, and jurisdiction to distribute it. As a consequence the court must determine the rightful priority of the conflicting claims, and adjudge whether the claimant has a valid claim to a dividend out of the fund. It is the duty of the trustee to appear and protect the fund in the custody of the court.

[3] Before proceeding to consider the merits of the claims in issue, a question as to the admissibility of evidence must be determined. At the hearing before the referee, counsel for claimant offered testimony of one Walter J. Reynolds, former president of the bankrupt company. This testimony was taken on an examination under section 21a of the Bankruptcy Act; it was not taken as a deposition to be used in these proceedings. Upon objection of counsel for trustee, the testimony was excluded by the referee. To this ruling the counsel for claimant object in their petition for review. This examination, taken generally under section 21a of the Bankruptcy Act, was not directed to any defined issue, and was inadmissible in these proceedings. I therefore sustain the ruling of the referee in this regard. In re Wilcox, 109 Fed. 628, 48 C. C. A. 567; In re Alphin & Lake Cotton Co., 131 Fed. 824; Breckons v. Snyder, 211 Pa. 176, 60 Atl. 575, 15 Am. Bankr. Rep. 112.

[4] 2. The first claim to be considered is that evidenced by $88,000 of the first mortgage bonds of the National Boat & Engine Company, secured by the Astor Trust mortgage.

The bonds and coupons were filed with the proof and made a part of it. The consideration stated for the deposit and transfer of the $88,000, at par value, of bonds, is that the National Boat & Engine Company desired to have Butterfield surrender a certain trust deed, dated January 8, 1909, given by the Racine Boat Manufacturing Company to him, to indemnify him against indorsements upon notes amounting to over $41,000, assumed by the National Boat & Engine Company; that accordingly the National Boat & Engine Company entered into a certain agreement on April 6th with Butterfield to protect him on his indorsement, and deposited with the trustees named 88 of the bonds, of the par value of $1,000 each, as security for the fulfillment by the National Boat & Engine Company of its agreement with Butterfield. . The surrender of the trust deed is named in the proof of this claim as the consideration for the deposit of the bonds. Certain other considerations are now relied upon by the claimant; but no other consideration has been brought· to the attention of the court which seems sufficient to sustain the proof. The trustee in bankruptcy contends that the surrender of the trust deed of the Racine Company was no consideration whatever for the deposit of the bonds, because the trust deed was fraudulent in its inception, was voluntarily withheld from record by the consent, and with the connivance of Mr. Butter·field, and that it is. void. Butterfield testifies that the vote of the company authorizing the deed was not transcribed, or inscribed in the original record book, and that it was left in loose sheets because it was hoped that the bond issue and preferred stock issue would wipe out the indebtedness, so that it would not be necessary to have any trust deed, and that in case the stock issue was enough to take care of the indebtedness, there would be no need of having any writing made in the books of the company relating to any trust deed.

With regard to the recording of the deed, the following testimony of Mr. Butterfield is before me:

"Q. Mr. Butterfield, was that mortgage deed covering all the real estate and property and business of this Racine Boat Manufacturing Company ever recorded? A. No, sir.

"Q. Why not? A. It was given with that understanding it was not to be recorded except any loss resulted—if I thought the company was on their last legs or about to fail—and then I was to use my own discretion whether to record it then or not.

"Q. And why wasn't it recorded? A. We thought by recording it it would affect the credit of the company.

"Q. In what way, how? A. It would become publicly known, the conditions set forth in that trust deed, which would naturally affect the credit of the company.

"Q. Publicly known to the creditors of the company? A. Creditors and bondholders.

"Q. And you say this was the understanding—the understanding with whom? A. With Mr. Reynolds and the officers of the company, with myself and others interested, Mr. Reynolds, Mr. Ross, and Mr. McCracken.

＊　＊　＊　＊　＊　＊　＊　＊　＊　＊

"Q. So pursuant to that understanding, it was intentionally not recorded? A. Yes.

＊　＊　＊　＊　＊　＊　＊　＊　＊　＊

"Q. And what was done in not recording was done with the knowledge of all the other directors of the Racine Boat Manufacturing Company? A. Yes, sir."

It appears, then, from Butterfield's testimony that the mortgage deed was intentionally kept from record; that this was done by agreement between him and certain other directors of the company; that it was done simply because, if publicly known to the creditors and bondholders, it would affect the credit of the company; that if it was found the company was "on its last legs and was about to fail," he was then to use his own discretion whether to record the deed or not; that before any option had been obtained upon the properties of the Racine Boat Manufacturing Company, the plan of substituting bonds for the trust deed was talked over between himself and certain other directors; that it was agreed that no mention should be made in the trust deed of the option; that the trust deed was to be exchanged for bonds to be held in escrow to cover the contingent liability for indorsements upon notes of the company; that he allowed the negotiations to go on with that understanding; that the prospectus issued by the promoters of the consolidation of the Racine and other companies with the National Boat & Engine Company contained no reference to the Racine Company trust deed. It appears, also, that neither the deed nor bill of sale by which the property of the Racine Company was transferred to the National Boat & Engine Company contained any reference to the trust deed, and that the deed of the real estate from the Racine to the National was a warranty deed of the property free from all incumbrances.

It is the doctrine of the Supreme Court that where, by collusion of the mortgagor, the mortgagee withholds a mortgage from record for the purpose of giving the mortgagor a fictitious credit, and inducing others to give him credit, and the mortgagor fails and is unable to pay the debts thus contracted, the mortgage is fraudulent at common law. Blennerhasset v. Sherman, 105 U. S. 100, 26 L. Ed. 1080. Such a mortgage is held void at common law, whether the motive of the mortgagee be gain to himself, or advantage to the mortgagor. It is held that such a mortgage will not be made valid by the fact that it was supported by a sufficient consideration, and that a deed, not at first fraudulent, may afterwards become so by being concealed, or by not being produced, if thereby creditors are induced to loan money. Hungerford v. Earl, 2 Vern. 261; Clayton v. Exchange Bank, 121 Fed. 630, 634, 57 C. C. A. 656; Davis v. Schwartz, 155 U. S. 631, 15 Sup. Ct. 237, 39 L. Ed. 289; Blennerhasset v. Sherman, supra, 105 U. S. 100, 26 L. Ed. 1080. In Sawyer v. Turpin, 91 U. S. 114, 23 L. Ed. 235, the Supreme Court held that the evidence did not justify the assertion that there was any agreement that the bill of sale should not be recorded, or that possession should not be taken under it. Wherever such agreement is shown, the Supreme Court has held it sufficient to render a deed void at common law. In the Perkins Case (D. C.) 155 Fed. 237, this court held from the facts disclosed that the nonrecording of a "conditional sales contract" was not a mere matter of omission, but was in pursuance of a distinct plan that there should be no record; and the court held the sale invalid. In the Shaw Case (D. C.) 146 Fed. 273, this court held a mortgage void for the reason that it was fraudulently withheld from record; there being a distinct and affirmative understanding that the mortgage was not to be recorded. Certain statutes and decisions

of Michigan are cited by claimant, and it is true that local laws are controlling in many transactions in bankruptcy. Taney v. Penn. Bank, 232 U. S. 174, 180, 34 Sup. Ct. 288, 58 L. Ed. 558; Humphrey v. Tatman, 198 U. S. 91, 25 Sup. Ct. 567, 49 L. Ed. 956. But no Michigan law is brought to my attention in this case which overrides or varies the plain provisions of the Bankruptcy Law.

In Fourth Nat. Bank v. Willingham, 213 Fed. 219, just decided by the Circuit Court of Appeals for the Fifth Circuit, the court sustained the contention of the trustee in bankruptcy that a certain mortgage was "withheld from record to bolster the credit of the mortgagor," and held that the mortgage was fraudulent and void because of the agreement between the parties that it should be withheld from record for such purpose. The court affirmed the decision of the court below on the authority of Clayton v. Exchange Bank, 121 Fed. 630, 57 C. C. A. 656, and of The Duggan Case, 183 Fed. 405, 106 C. C. A. 51. In both the cases last cited, the agreement to withhold the mortgage from record was only a tacit agreement.

In the case at bar, this agreement was distinct, open, and unquestioned. It is brought before the court by the testimony of the claimant. The case shows an intentional nonrecording of the trust deed for the distinct purpose of avoiding publicity, and to avoid injury to the credit of the company. The deed of the Racine Company to the National Company contained a warranty against all incumbrances, and made no mention of the existence of the Racine mortgage. The whole testimony shows a secret scheme and conspiracy to substitute bonds for the trust deed; that the conspiracy was entered into between the claimant, Butterfield, and certain other directors, with the evident purpose of concealing its existence from other members of the board of directors of the National Boat & Engine Company. I am forced to the conclusion that the trust deed of the Racine Company was fraudulent and void, and forms no basis for a valid transfer of the $88,000 par value of the bonds. The learned counsel for claimant contends that, outside the surrender of the trust deed, there was other consideration for the deposit of the $88,000 of bonds. He urges that there was an agreement by the claimant to renew his indorsements, and that there were further considerations. I find that under the circumstances of the case there was no other good and sufficient consideration for the transfer of the bonds, which would make such transfer valid as against the trustee in bankruptcy. And I further find that the transfer of the $88,-000 of bonds was invalid as against said trustee, for the reason that the same was a preference voidable by the trustee, both under the general principles of equity and the express provisions of section 60b of the Bankruptcy Act, as amended.

[5] 3. I proceed now to consider the assigned claims of Mary E. McCracken and others upon $32,000 of the bonds of the National Boat & Engine Company, for a dividend out of the proceeds of the assets covered by the lien of the Astor Trust Company mortgage. Mary E. McCracken, the National Lumberman's Bank, and the Hackley National Bank were creditors of the Racine Boat Manufacturing Company, having total claims of $29,456, namely, Mrs. McCracken for the

sum of $9,000, the National Lumberman's Bank for $10,456, and the Hackley National Bank for $10,000. They represent money loaned by them to the Racine Company upon notes which have not been paid. In order to secure them, the officers of the National Boat & Engine Company gave to these creditors bonds amounting in all to $32,000 secured by the Astor Trust Company mortgage, and in consequence of this these creditors allowed their indebtedness to continue when its payment might have been demanded. The transfer of the bonds now in question does not depend upon the same state of facts as that of the transfer of the $88,000 of the bonds of the National Boat & Engine Company. It does not relate to the Racine trust mortgage, or to matters discussed in passing upon the first claim.

There is a stipulation that these bonds for $32,000 were delivered by the officers of the National Boat & Engine Company as collateral security for the debts of Mrs. McCracken and the two banks. The trustee contends that the transfer of these bonds was without consideration; that they were deposited with the banks and with Mrs. McCracken as additional security on antecedent debts, namely, upon the original notes on which Butterfield was liable as indorser; that they were deposited, not for the purpose of furnishing additional capital to the company, or to assist in the purchase of manufacturing products; that their transfer was without authority, and in fraud of the rights of stockholders.

The proofs show that the bonds were delivered to creditors of the Racine Boat Manufacturing Company more than six months before the bankruptcy of the National Boat & Engine Company, in order to give security to those creditors. If the physical possession of the pledge had been left with the debtor, the burden of proof would have been upon the trustee in bankruptcy. Barr v. Reitz, 53 Pa. 256; Taney v. Penn. Bank, 232 U. S. 174, 181, 34 Sup. Ct. 288, 58 L. Ed. 558. But here the transaction was completed. The creditors have not received the protection from the bonds to which they are entitled. No action is shown in behalf of the National Boat & Engine Company to limit its obligations in so transferring bonds for the protection of the creditors of the old company, whose property had been absorbed by the National Boat & Engine Company. I think Mary E. McCracken, the National Lumberman's Bank, and the Hackley National Bank are entitled to the security of the $32,000 of bonds of the National Boat & Engine Company. The testimony fails to satisfy me that the pledging of the bonds was for any fraudulent purpose. I sustain the claim of the petitioner. I give him the benefit of the security of these bonds to a dividend out of the proceeds of the assets covered by the lien of the Astor Trust Company mortgage.

In reference to the two claims which I have so far considered, I sustain the finding of the referee in disallowing the claim for the proceeds of the $88,000 evidenced by the first mortgage bonds of the bankrupt company. I reverse the decision of the referee in disallowing the claim of Mary E. McCracken and others upon the $32,000 of bonds of the National Boat & Engine Company, and hold that this claim may be allowed for a dividend out of the proceeds of the assets covered by the lien of the Astor trust mortgage.

4. The referee has passed upon certain preferences alleged to have been made against the provisions of the Bankruptcy Act, and in violation of the general principles of equity. Some of the contentions as to preferences under general equity principles prior to the four months' period have been withdrawn by counsel for trustee, leaving only the following alleged preferences to be considered by me:

First. The sum of $1,543.50, paid to the Lumberman's National Bank on June 26, 1911, within four months prior to the filing of the petition in bankruptcy, upon a note on which Butterfield was liable as indorser, and thereby benefited.

Second. The payment of the sum of $1,000 to the Old National Bank, within the four months' period, upon a note which had been guaranteed in writing by the claimant Butterfield, and who was thus benefited thereby.

Third. The payment of the sum of $1,000 by the bankrupt directly to the claimant Butterfield, in May or June, 1911, and within the four months' period, to reimburse the claimant for a prior loan of that sum to defray the pay roll of the company.

The determination of whether or not the above payments constitute preferences under the Bankruptcy Act becomes material to the issues here involved; since it is claimed by the learned counsel for trustee that, if these payments are found to constitute preferences under section 60b of the Bankruptcy Act, this would constitute a ground for refusing to allow any claim which might otherwise be allowed, until such preferences shall have been surrendered by the claimant.

Upon examination of the evidence, I find that the above payments were voidable preferences under section 60b of the Bankruptcy Act. I sustain the ruling of the referee as to the same.

In reference to the question of not allowing any of the claims in question, we are met by section 57g of the Bankruptcy Act:

"The claims of creditors who have received preferences, voidable under section sixty, subdivision 'b,' or to whom conveyances, transfers, assignments, or incumbrances, void or voidable under section sixty-seven, subdivision 'e,' have been made or given, shall not be allowed unless such creditor shall surrender such preferences, conveyances, transfers, assignments, or incumbrances."

In relation to this section, it is clear that, as the law now stands, no claim is allowable where the claimant has received any advantage over his co-claimants by means of a preference which is voidable under section 60b, or by means of a conveyance, transfer, assignment, or incumbrance which is void or voidable under section 67e. Collier on Bankruptcy (9th Ed.) page 731; Stevens v. Nave-McCord Mercantile Co., 150 Fed. 71, 80 C. C. A. 25. Having this provision of law in mind, I order that the claims of Mary E. McCracken, the National Lumberman's Bank, and the Hackley National Bank, in which the claimant Butterfield has the only beneficial interest, shall finally have the benefit of the $32,000 of the bonds of the National Boat & Engine Company, in pursuance of what I have already said in this opinion; but, according to the law which I have just cited, these claims, either upon the $32,000 bonds deposited as collateral, or upon the original notes,

cannot be allowed until the amount of said preferential payments above found, namely, one payment of $1,543.50 and two payments of $1,000 each, with interest on said sums from the date of the decree of this court in these proceedings, shall have been surrendered by the claimant to the trustee in bankruptcy. The claimant Butterfield, then, cannot receive the benefit from the $32,000 bonds until he shall have surrendered these preferences.

The claims of Mary E. McCracken, National Lumberman's Bank, and Hackley National Bank, upon the original notes offered for proof and assigned to Butterfield for which the $32,000 par value of bonds are held as security, and also the claims of George Boyce and of the Old National Bank upon the original notes assigned by them to Butterfield and offered for proof, on which no bonds were held as security, are valid claims which should otherwise be allowed, but in face of the provisions of section 57g of the Bankruptcy Act are not allowable at the present time, and cannot be allowed until such preferential payments shall have been surrendered, as I have pointed out in this opinion.

The claimant recovers costs. Let a decree consistent with this opinion be presented in court on or before September 19, 1914; corrections to be presented not later than September 26, 1914; decree to be settled September 29, 1914.