James A. DAVIS, Trustee in the Matter of Midwest Livestock Commission Company, a Nevada corporation, Bankrupt, Appellant,

v.

SECURITY NATIONAL BANK OF NEVADA, Appellee.

No. 24774.

United States Court of Appeals, Ninth Circuit.

Aug. 19, 1971.

Richard W. Horton (argued), of Stewart & Horton, Reno, Nev., Diehl & Recanzone, Fallon, Nev., for appellant.

Sidney W. Robinson (argued), Frank Cassas, Jr., Robert Ziemer Hawkins, of Hawkins, Rhodes & Hawkins, Reno, Nev., for appellee.

Before CHAMBERS and KILKENNY, Circuit Judges, and WILLIAMS, District Judge.*

KILKENNY, Circuit Judge:

This is an appeal from a judgment of the district court dismissing appellant's action against appellee for the recovery of a substantial amount of money claimed to be a preferential transfer within the meaning of Section 60 of the Bankruptcy Act. [11 U.S.C. § 96].

FACTUAL BACKGROUND

Appellant is trustee in bankruptcy for Midwest Livestock Commission Company [Midwest], former operator of a livestock auction yard at Fallon, Nevada. Midwest received cattle upon consignment from various sellers and upon the consummation of a sale would accept a draft or check from the purchaser. Midwest would then deposit the draft or check in its checking account with appellee. In turn, a check would be drawn by Midwest upon this account to the consignor-seller for the sales price less commission. In December, 1962, appellee opened a branch in Fallon, and Midwest opened an account in that branch and closed its general account, payroll account and trust account in appellee's Reno office. Subsequent to December, 1962, Midwest deposited all funds it received in its business in the one checking account, including all payments received from the sale of consigned livestock.

In June, 1963, Midwest embarked upon a scheme of "kiting" in connection with its account in appellee's bank, and thereafter deposited a series of spurious

* The Honorable David W. Williams, United States District Judge for the Central District of California, sitting by designation.

checks and drafts which purported to be the proceeds of sales of consigned livestock. Appellee gave Midwest immediate credit on these drafts and checks and honored checks drawn by Midwest against this account. During the months of June, July and August, 1963, the spurious drafts so deposited aggregated $219,000.00. Prior to August 22, 1963, appellee learned that the drafts were fraudulent and on that date discussed the problem with the officers of Midwest. The last of the forged drafts was deposited August 21, 1963. At that time, Midwest was insolvent. From August 23, 1963, to the date the account was closed on September 25, 1963, deposits of $246,000.00 were made to the account. These deposits included $225,169.57 in proceeds from the sales of livestock consigned to Midwest for auction during this period. From August 21, 1962, to September 18, 1963, the appellee, with full knowledge that the major portion of Midwest's bank account consisted of the proceeds of sales of livestock, by debit memos back-charged the Midwest account for a total of $198,965.12. The major portion of the back-charges, $183,903.87, was in connection with returned fictitious drafts, the balance was for repayment of a loan made by appellee to Midwest in the sum of $15,061.25.

On October 22, 1963, an involuntary petition in bankruptcy was filed against Midwest and it was adjudicated a bankrupt on March 26, 1964. It filed a Chapter X proceeding [11 U.S.C. § 501 et seq.] on April 17, 1964. An order dismissing the Chapter X proceedings and directing the trustee to proceed with the original bankruptcy proceedings was entered on June 9, 1965. This action was commenced on September 9, 1966, more than two years after adjudication, but less than two years elapsed time if the period involved in the Chapter X proceedings is eliminated.

### ISSUES

(1) The principal issue is whether the two year statute of limitations outlined in § 11(e) of the Bankruptcy Act [1] [11 U.S.C. § 29(e)] barring a claim by a trustee is tolled by § 261 of the Bankruptcy Act [11 U.S.C. § 661] [2], during the pendency of reorganization proceedings pursuant to Chapter X of the Bankruptcy Act [11 U.S.C. § 501, et seq.].

On this appeal, we are concerned only with the claim to recover or avoid a preference under § 60 of the Bankruptcy Act [11 U.S.C. § 96], the appellant's third cause of action. The lower court held that this claim was barred by the statute of limitations. 11 U.S.C. § 29(e).

■ At the outset, we hold that this is a classical case for utilization of 11 U.S.C. §§ 96(a) (1) and (b). Beyond question, the appellee's actions created a voidable preference under the provisions just cited.

The applicable statute of limitations which the lower court relied upon and which appellee now urges upon us is 11 U.S.C. § 29(e). The statute is controlling unless tolled during the Chapter X proceedings by § 661.

The solution to the problem requires an analysis of the object and purpose of the Chapter X proceedings. In the first

---

1. 11 U.S.C. § 29(e).

    *     *     *     *     *

"(e) A receiver or trustee may, within two years subsequent to the date of adjudication or within such further period of time as the Federal or State law may permit, institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Federal or State law had not expired at the time of the filing of the petition in bankruptcy
* * *."

    *     *     *     *     *

2. 11 U.S.C. § 661.

"§ 661. *Suspension of statutes of limitation, etc.*

All statutes of limitation affecting claims and interests provable under this chapter and the running of all periods of time prescribed by this title in respect to the commission of acts of bankruptcy, the recovery of preferences, and the avoidance of liens and transfers shall be suspended while a proceeding under this chapter is pending and until it is finally dismissed."

instance, we emphasize that the tolling statute [11 U.S.C. § 661] is an integral part of Chapter X. 11 U.S.C. § 659, another segment of Chapter X, provides that upon a dismissal under that Chapter, the prior proceedings must be reinstated and appropriate provision made for the retransfer of property to the person or persons entitled thereto. 11 U.S.C. § 638 makes it clear that where a petition was originally filed under 11 U.S.C. § 527,[3] the original bankruptcy proceeding shall be deemed reinstated and shall thereafter be conducted, insofar as possible, as if the petition under Chapter X had never been filed.[4] In construing the provisions of § 638, one text writer has observed that "[T]hese * * * provisions [11 U.S.C. §§ 638, 778(e)] preserve to the estate its rights in preferential and fraudulent transfers and the like, and vest in the trustee a title to property which would relate back to the date of the original petition."[5] We agree with this analysis of the section. Here, the order of June 9, 1965, dismissing the Chapter X proceeding reinstated the original bankruptcy proceeding. Without the suspension provisions of § 661, the stated objectives of § 638 preserving to the estate its rights in preferential and fraudulent transfers might be totally abrogated. There is no problem where, within a period of less than two years, an order of adjudication in bankruptcy follows dismissal of a Chapter X proceeding and a suit is then commenced to recover a preference.

Likewise, as in In re Ira Haupt & Co., 390 F.2d 251 (2d Cir. 1968), cert. denied, Kamerman & Kamerman v. Seligson, 391 U.S. 916, 88 S.Ct. 1811, 20 L. Ed.2d 655 (1968), when a Chapter X proceeding is filed pending bankruptcy, but before an adjudication upon the dismissal of the Chapter X proceeding, there is no problem if the trustee commences his action to recover a preference within two years from the subsequent date of adjudication. In neither of those instances is the suspension provision of § 661 called into play.

Appellee argues that the appellant trustee is barred because the Chapter X trustee might have proceeded to recover the alleged preferential payment. To be sure, the Chapter X trustee had all of the powers of a trustee in bankruptcy. 11 U.S.C. § 514. Appellee cites Bovay et al. v. H. M. Byllesby & Co., 27 Del.Ch. 33, 29 A.2d 801 (1943) (Del.Ch. 1943) and similar cases. While the mentioned cases give periphery support to this theory, they are all readily distinguishable. *Bovey* involved a state statute of limitations and the issue was whether § 661 applied to such a statute. Although Nairn v. McCarthy, 120 F.2d 910 (7th Cir. 1941), cited by appellee, was also concerned with a state statute, it strongly suggests that the limitation period provided in the Bankruptcy Act would be tolled or suspended by the predecessor of § 661. Moreover, there is nothing in the Act which even remotely suggests that the Chapter X trustee is

3. "§ 527. *Same; pending bankruptcy proceeding*

A petition may be filed in a pending bankruptcy proceeding either before or after the adjudication of a corporation."

4. 11 U.S.C. § 638.
"§ 638. *Procedure upon order directing that bankruptcy be proceeded with—Reinstatement of bankruptcy proceeding; trustee; filing of separate debt schedule; tax claims; provable claims; date for first meeting of creditors; disallowance of untimely claims*

(a) Upon the entry of an order directing that bankruptcy be proceeded with—
(1) Where the petition was filed under section 527 of this title, the bankruptcy proceeding shall be deemed reinstated and shall thereafter be conducted, so far as possible, as if the petition under this chapter had not been filed; or where the petition was filed under section 528 of this title, the proceeding shall thereafter be conducted so far as possible, in the same manner and with like effect as if an involuntary petition for adjudication had been filed at the time when the petition under this chapter was filed, and a decree of adjudication had been entered at the time when the petition under this chapter was approved;"
* * * * *

5. Weinstein, The Bankruptcy Law Of 1938, pp. 243–4.

*required* to exercise *all* of the powers of a general trustee in bankruptcy.

Appellee places heavy reliance on a footnote, Collier on Bankruptcy, 14th Edition, Vol. 6A, n. 21, p. 1192. It is enough to say that the footnote finds no support in the cited cases. For that matter, Nairn v. McCarthy, *supra,* supports the position of the appellant, rather than appellee. Moreover, it is difficult, if not impossible, to reconcile the language of the footnote with the language of the text.[6] Despite this apparent confusion, Collier makes it abundantly clear that § 661 was designed for the protection of creditors and to safeguard any action which may be taken in a subsequent bankruptcy administration.

The Congressional history of § 661 is of value. It is derived from § 77B, the parent of the present Chapter X, and is in general support of our conclusions. The conference report on 77B reads: "The Senate amendment, to which the House agreed, *tolls the running of the statute of limitations during* the pendency of proceedings under this section [now Chapter X]". House Reports, 73d Congress, 2d Sess., Vol. 3, 1934.

■ After a thorough analysis of the applicable provisions of the Bankruptcy Act, we are forced to the conclusion that § 661 was designed for two purposes: (1) for the protection of creditors, and (2) to safeguard any action which might be undertaken in a subsequent bankruptcy administration, the trustee of which was appointed either before or after the Chapter X proceeding. On the facts before us, the applicable sections of the Bankruptcy Act can be properly utilized only by holding that § 661 suspends the operation of § 29(e), the limitations statute, during the Chapter X proceeding.

■ (2) Next, the appellant claims that he should have been permitted to amend his complaint by alleging a preferential transfer in the sum of $198,-965.12, rather than $150,000.00. We agree. It is clear that the denial of the amendment by the lower court was premised upon the view that the third cause of action was barred by the statute of limitations.

■ (3) Appellee urges us to affirm even though we conclude, which we do, that the lower court was in error on the issue relating to the statute of limitations. It calls our attention to the fact that the trial court has already decided that the funds in question rightfully belong to the owners of the livestock and that appellant has no standing to challenge the preferential transfer to appellee. We disagree.

First of all, it is evident that the lower court did not attempt to adjudicate the rights of the parties in the cause of action charging a preferential transfer under the provisions of 11 U.S.C. §§ 96(a) (1) and (b). We quote from the court's opinion:

"To place the issue in perspective, it should be emphasized that this is not an action to recover or avoid a preference under Section 60 of the Bankruptcy Act (11 U.S.C. 96). In an earlier ruling in this case, the Court considered itself compelled to sustain the defense of the statute of limitations with respect to that portion of the Complaint which alleged a cause of action to avoid the preference." [T.R., pp. 243–244].

6. "While § 261 [11 U.S.C. § 661] suspends the running of the periods of time mentioned, that does not mean that preferences cannot be recovered under § 60 and liens and transfers cannot be avoided under § 67a, § 67d, and § 70e during the administration . of the proceeding under Chapter X. Such recovery and avoidance may be had during the Chapter X administration, but § 261 [Section 661] recognizes the possibility that either no such action will be taken or the pertinent facts will not be discovered before the dismissal of the reorganization proceeding, and it accordingly suspends the running of the various periods of time involved." Collier on Bankruptcy, 14th Ed., Vol. 6A, pp. 1192–1193.

Accordingly, what was said by the court on the issue of whether the trustee could recover on a common law trust fund theory is not controlling in this action to avoid a preference under 11 U.S. C. § 96(a) (1).

The cases cited by the lower court in support of its conclusion that a common law action under 11 U.S.C. § 110 could not be maintained by the trustee, recognized that an action voiding a preferential transfer may be maintained by a trustee. For example, we quote from Dudley v. Easton, 104 U.S. 99, 103, 26 L.Ed. 668 (1881), "* * * As to everything except *fraudulent conveyances* and *fraudulent preferences* under the bankrupt law, he [Trustee] takes by his assignment, as a purchaser from the bankrupt, with notice of all outstanding rights and equities. Whatever the bankrupt could do to make the assigned property available for the general creditors he may do, but nothing more, except that he may sue for and recover that which was conveyed in fraud of the rights of creditors, *and set aside all fraudulent preferences. As to such preferences and conveyances he has all the rights of a judgment creditor, as well as the powers specifically conferred by the bankrupt law.*" (Emphasis supplied.)

The funds in question were deposited to bankrupt's account, and were seized by the appellee as the property of the bankrupt. Appellee has cited no authority, and we have found none, which on a comparative record, permits the transferee under a preferential transfer prohibited by § 96, to defend on the ground that the property transferred was not, in fact, the property of the bankrupt. On the record before us, we hold that such a defense is impermissible. What segment of the funds, if any, is subject to claims under theories of resulting, or constructive, trusts we leave to future litigation.

The judgment of the lower court is set aside and the cause remanded for further proceedings in conformity herewith.